**In re James Michael MAURER, Debtor.**

**James Michael MAURER, Appellant,**

**v.**

**John A. HEDBACK, Trustee for the Bankruptcy Estate of James Michael Maurer, Appellee.**

**Civil No. 4-91-651.**

**Bankruptcy No. 3-90-5182.**

United States District Court,
D. Minnesota,
Fourth Division.

May 27, 1992.

Eric L. Crandall, and Cummins, Gervais & Associates, Bayport, Minn., for appellant.

John A. Hedback, and Hedback & Associates, Roseville, Minn., for appellee.

## ORDER

DOTY, District Judge.

This matter is before the court on an appeal from an order of the bankruptcy court dated July 16, 1991. Based on a review of the file and record, the court affirms the order of the bankruptcy court.

## BACKGROUND

On November 6, 1990, the appellant James Michael Maurer ("Maurer") filed a bankruptcy petition pursuant to Chapter 7. Maurer's bankruptcy schedules indicated that he had no bank deposits or cash on hand and that the remainder of his property was exempt under 11 U.S.C. § 522(d). On November 7, 1990, appellee John A.

Hedback ("Hedback") was appointed as interim trustee for the bankruptcy estate.

At a meeting of the creditors held on December 16, 1990, it was discovered that Maurer had an interest in a PERA pension plan. In order to protect that interest, Maurer converted his exemptions to those provided for under Minnesota statutes. Under Minnesota law, deposits and tax refunds are not exempt, thus Hedback requested that Maurer produce various bank statements and tax returns. Maurer's bank statements showed that Maurer had $1,083.11 on deposit in a checking account on the date that he filed his bankruptcy petition.

Hedback demanded that Maurer turn over that amount. When Maurer refused, Hedback brought a motion in bankruptcy court to require Maurer to release those funds. Maurer responded that the amount on deposit on the date of filing should be offset by three checks written and delivered to creditors prior to filing but paid after filing.[1] Thus, Maurer argued that he should only be required to turn over $43.21. In its order dated July 16, 1991, the bankruptcy court found in favor of Hedback and ordered Maurer to turn over the full amount to Hedback. Maurer now appeals that decision.

## DISCUSSION

■ In the present case, the underlying facts are undisputed, thus the court must determine one issue: on what date are checks properly included in a bankruptcy estate pursuant to 11 U.S.C. § 541, the date on which they are delivered to creditors or the date on which they are honored by the drawee bank. Because this presents a legal question, the court reviews the issue de novo. *In re Newcomb*, 744 F.2d 621, 625 (8th Cir.1984) (when a trans-

fer actually occurs is question of law to be reviewed de novo). Under that standard:

the district court must independently determine the correctness of the ultimate legal conclusion adopted by the bankruptcy judge on the basis of the facts found.

*In re Hammons*, 614 F.2d 399, 403 (5th Cir.1980). With that standard in hand, the court will consider Maurer's appeal.

■ The Bankruptcy Act provides that: "The commencement of a case under section 301, 302 or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

(1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case...."

11 U.S.C. § 541(a). The Act further defines a transfer as:

Every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption.

*Id.* § 101(54). Although what constitutes a transfer and when it occurs is generally a matter of federal law, *see Barnhill v. Johnson*, — U.S. —, 112 S.Ct. 1386, 1389, 118 L.Ed.2d 39 (1992) (citing *McKenzie v. Irving Trust Co.*, 323 U.S. 365, 369–70, 65 S.Ct. 405, 407–08, 89 L.Ed. 305 (1945)), in the absence of any controlling federal law, property and interests in property are defined by state law. *Id.* (citing *McKenzie*, 323 U.S. at 370, 65 S.Ct. at 408; *Butner v. United States*, 440 U.S. 48, 54, 99 S.Ct. 914, 917–18, 59 L.Ed.2d 136 (1979)). Thus, when determining whether a transfer occurs on the date on which a check is

---

**1.** Those checks are:

| Check No. | Date of Check | Creditor | Amount |
|---|---|---|---|
| 12327 | 09–11–90 | Wal–Mart | $ 58.90 |
| 12351 | 10–19–90 | NSP | 121.00 |
| 12369 | 11–02–90 | Shearson/ Lehman | 860.00 |
| | | TOTAL | $1,039.90 |

delivered or the date on which a check is honored for purposes of evaluating preferential transfers pursuant to 11 U.S.C. § 547(b), the Supreme Court turned to state law to analyze "the rights and duties enjoyed ... by each party to a check transaction." *Id.* Specifically, the Supreme Court examined the Uniform Commercial Code ("U.C.C.") to ascertain which date should control such preferential transfers. *Id.* The Supreme Court noted that:

> Under the U.C.C., a check is simply an order to the drawee bank to pay the sum stated, signed by the maker and payable on demand. Receipt of a check does not, however, give the recipient a right against the bank. The recipient may present the check but, if the drawee bank refuses to honor it, the recipient has no recourse against the drawee.

*Id.* 112 S.Ct. at 1389 (U.C.C. citations omitted). Relying on the U.C.C.'s definition of a check holder's rights, the Supreme Court concluded that:

> no transfer of any part of the debtor's claim against the bank occurred until the bank honored the check.... The drawee bank honored the check by paying it.... We thus believe that when the debtor has directed the drawee bank to honor the check *and* the bank has done so, the debtor has implemented a 'mode, direct or *indirect* ... of disposing of property or an interest in property.'

*Id.* at 1390 (quoting 11 U.S.C. § 101(54)) (U.C.C. citations omitted) (emphasis in original). The Supreme Court concluded that for purposes of determining preferential transfers pursuant to 11 U.S.C. § 547(b):

> For the purposes of payment by ordinary check, therefore, a "transfer" as defined by § 101(54) occurs on the date of honor, and not before.

*Id.*[2]

The Eighth Circuit has not yet determined whether the date of delivery or date of honor controls the transfer of checks into a bankruptcy estate. The Eighth Circuit has adopted the date of delivery as the date on which a transfer occurs for purposes of evaluating a new value defense under § 547(c)(4), but noted that "the majority of courts hold that transfer occurs on payment for purposes of determining when a preference occurs under § 547(b)." *In re Kroh Bros. Dev. Co.*, 930 F.2d 648, 651 (8th Cir.1991). In discussing the conflict in the dates of such transfers, the Eighth Circuit emphasized the difference in the policies underlying § 547(c), "to encourage creditors to deal with troubled businesses in the hope of rehabilitation" *id.* at 651 (citations omitted), and the policies underlying § 547(b), which allow trustees to avoid preferential transfers to ensure equality of distribution among creditors. *Id.*

Examining those underlying policies, the court concludes that the present case presents a situation much closer to the factual circumstances underlying § 547(b) claims rather than claims pursuant to § 547(c). That is, when evaluating the effectiveness of a transfer that occurs within days of the filing of a bankruptcy petition, the court should be more concerned with ensuring equality of distribution among creditors rather than encouraging creditors to deal with troubled businesses. The court thus concludes that the Supreme Court's analysis in *Barnhill* regarding preferential transfers pursuant to § 547(b) should be applied to the present situation. Accordingly, the court adopts the date of honoring rather than the date of delivery for purposes of determining when a check transfers into the bankruptcy estate under 11 U.S.C. § 541.

This rule also comports with other decisions of the United Bankruptcy Courts for the District of Minnesota. *See, e.g., In re Lange,* 110 B.R. 907, 909–10 (Bankr. D.Minn.1990) (holding that "the issuance of a check does not operate as an immediate

---

**2.** Thus, the Supreme Court concluded that because it was undisputed that the date of honor occurred within the ninety-day preference period pursuant to § 547(b), the trustee could presumptively avoid that transfer. *Id.*

assignment of funds in an account; the funds remain subject to third-party claims until the draft is accepted by the drawee.... Thus, the transfer of funds ... takes place· upon acceptance and payment by the drawee bank", relying on the Minnesota U.C.C. and 11 U.S.C. § 541(a)); *In re Ramy Seed Co.*, 57 B.R. 425, 429 (Bankr.D.Minn.1985) (for purposes of § 547(b)(4)(A), holding that a check does not operate as an assignment of any funds until the drawee honors the check, relying on the definition of transfer in § 101 of the Bankruptcy Code); *cf. Olsen–Frankman Livestock Marketing Serv. v. Citizens Nat'l Bank*, 4 B.R. 809, 812–13 (D.C.Minn. 1980) (relying on Minnesota U.C.C. prior to the enactment of the Bankruptcy Code to hold that under Minnesota law, a check is merely a promise to pay and does not vest title of the funds in the payee).

Based on the foregoing, the court concludes that for purposes of 11 U.S.C. § 541, a transfer of funds into the bankruptcy estate occurs on the date on which a check is honored, not on the date on which the check is delivered. Accordingly, the court concludes that the order of the bankruptcy court dated July 16, 1991, is correct in all respects. Accordingly, IT IS HEREBY ORDERED that:

1. Maurer's appeal is denied; and

2. The order of the United States Bankruptcy Court dated July 16, 1991, is affirmed in all respects.