In re David Allen FIGUEIRA, Janis Stebley–Figueira, Debtors.

Bankruptcy No. 91–42194–7.

United States Bankruptcy Court, D. Kansas.

Dec. 30, 1993.

Robert L. Baer, Trustee, Susan L. Mauch, Cosgrove, Webb & Oman, Topeka, KS, for trustee.

Michael E. Riling, Riling, Burkhead, Fairchild & Nitcher, Chartered, Lawrence, KS, for debtors.

## MEMORANDUM OF DECISION

JAMES A. PUSATERI, Chief Judge.

This matter is before the Court on the trustee's motion to compel the debtors to turn over property of the estate and the debtors' resistance thereto.

### FACTS

The parties have agreed to the relevant facts. The debtors filed this case on October 23, 1991. The meeting of creditors was held pursuant to 11 U.S.C.A. § 341 on November 25, 1991, and the trustee asked the debtors to produce their bank statements for the 90 days before they filed for bankruptcy. They produced the records in February of 1992. The debtors were granted a discharge on March 16, 1992.

The debtors' schedules revealed that they had a bank account, and stated that the account had a zero balance. Although the debtors had written checks to creditors prepetition which would reduce the balance to zero once they had all been honored, the records for the account show that on the day they filed their petition, the actual balance was $1,055.13.[1] Postpetition, their bank hon-

---

1. The trustee's written pleading does not specify when this amount of money was in the debtors' account, stating only: "Trustee requested copies of the Debtors' bank accounts 90 days prior to the date of filing. Trustee received those copies which showed an account balance in [the bank] of one thousand fifty-five dollars and thirteen cents." From his arguments at the hearing, the

ored the prepetition checks and the balance was reduced to zero. None of the creditors received $600 or more of the petition-date balance.

The debtors signed their petition on October 21, 1991, a Monday, and counsel filed it two days later. The court file discloses that on October 25, the United States Trustee signed a document appointing the trustee on an interim basis and the document was filed on October 28. This appointment later became final since no other trustee was elected at the meeting of creditors. No one filed an objection to the debtors' discharge. By letter dated August 14, 1992, the trustee first asked the debtors to turn over the $1,055.13 that had been in their checking account on the date of their petition. On February 16, 1993, he filed the present motion, asking that the debtors be required to turn that amount over to him.

### DISCUSSION AND CONCLUSIONS

The debtors wrote a number of checks prepetition and, as a matter of good bookkeeping, deducted the amount of each check from their bank balance at the time they wrote it. This method of checkbook balancing should be greatly preferred over the all-too-common method of using an automated teller machine or speaking to a bank teller to determine the balance available for spending without allowing for outstanding checks. Unfortunately, in the circumstance of reporting a bank balance on a bankruptcy petition, the latter would be the more accurate method.

The trustee claims that, by virtue of 11 U.S.C.A. § 541(a)(1), the $1,055.13 became property of the estate upon the filing of the debtors' petition, and that the debtors had the duty, under § 521(4), to surrender the money to him. Thus, the trustee demands the debtors now fulfill that duty. The debtors respond that the money is no longer available to them since the bank honored their prepetition checks, and suggest the trustee should try to recover the money from the creditors who received it, on the grounds

they violated the automatic stay and received voidable preferences. In addition, the debtors contend the relief sought by the trustee should be denied because: (1) the doctrine of laches bars it; (2) as the only asset of their bankruptcy estate, the money is not significant enough to administer and so should be abandoned; (3) a money judgment is not authorized under § 521; and (4) the debtors had no duty to stop payment on the checks and subject themselves to possible criminal or civil penalties. Neither side has cited any case law in support of any argument. The Court has been unable to locate any case addressing the trustee's ability to force debtors to turn over money that was in a bank account on the date of filing but was paid by the bank on prepetition checks, or to recover the amount from them later because they failed to turn it over.

Section 521(4) required the debtors to "surrender to the trustee all property of the estate and any recorded information, including books, documents, records and papers, relating to property of the estate." This is not generally interpreted to mean actual physical delivery; rather, a constructive delivery is made at the time the case is filed and physical delivery can be made, where suitable, on the trustee's request. See *3 Collier on Bankruptcy ¶ 521.11 at 521–54 (15th ed. 1993).* Unquestionably, the debtors' bank account and any balance in it became property of the estate upon the filing of their petition. See *11 U.S.C.A. § 541(a)(1).* What the trustee has overlooked, however, is that the bank account was not actual cash held by the bank for the benefit of the debtors, but simply a debt the bank owed them. The account became property of the estate, but that merely gave the estate, and, upon his appointment, the trustee, the right to seek payment from the bank. The trustee's theory would require debtors not only to surrender to him property they possessed on the filing date, but to collect all debts owed to them and then surrender those receipts to him as well. Nothing in the Bankruptcy Code or Rules requires debtors to do this.

Court understands him to be referring to and seeking to recover the balance in the account on

the filing date.

Instead, after the debtors disclosed the account's existence, the trustee had the ability to obtain any property of the estate that remained in the account. In fact, Federal Rule of Bankruptcy Procedure 2015(a)(4) requires the trustee to give notice of the case as soon as possible to any bank known to have deposits from the debtors.

■■■■ The Court believes the debtors' duties with respect to bank accounts are specified by § 521(1) and Federal Rules of Bankruptcy Procedure 1007(b)(1) and 4002(3) rather than by § 521(4). Unless the court orders otherwise, debtors must file the schedule of assets and liabilities required by § 521(1) and Rule 1007(b)(1), and their assets would, of course, include any bank accounts. If they have not filed that schedule, Rule 4002(3) requires them to "inform the trustee immediately in writing of the name and address of every person holding money or property subject to the [debtors'] withdrawal or order"; this would obviously include bank accounts. The statute and rules do not require debtors to withdraw the funds but only to make the information of the ability to withdraw available to the trustee.

■■■■ The debtors' theory that the trustee could recover from the creditors who cashed the prepetition checks because they violated the automatic stay and received avoidable preferences is also faulty. The "presentment of a negotiable instrument," such as a check, is expressly excepted from the stay, so the creditors were allowed to place those checks into the bank collection process. *See 11 U.S.C.A. § 362(b)(11); see also Kan.Stat.Ann.1992 Supp. 84–3–501(a) (defining "presentment" for purposes of the Kansas Uniform Commercial Code).* Even if the honoring of the checks would otherwise have constituted preferences, the trustee could not avoid them here because none of the creditors received $600 or more. *11 U.S.C.A. § 547(c)(7).* Although the debtors did not suggest it, the trustee apparently could not recover from their bank for honoring the checks postpetition. A bank without actual notice or actual knowledge of the commencement of the bankruptcy case, acting in good faith, may transfer property of the estate, or pay a debt owing to the debtor, to an entity other than the trustee with the same effect as if the case had not been filed. *11 U.S.C.A. § 542(c).* No evidence was presented to indicate the bank paid any of the checks after receiving notice of the bankruptcy. Thus, so far as appears from the materials submitted to the Court, the debtors' bank was absolved from its duty to turn the money over to the trustee when it properly honored postpetition the checks which the debtors had written prepetition.

■■■■ The debtors' schedules were filed along with their petition, and disclosed the name and address of their bank and their account number. However, the amount subject to withdrawal or order was inaccurately listed as zero. While doing so is understandable, it was an error to list the account with a zero balance. The question is whether this error damaged the estate, and if so, what punishment should be imposed on the debtors. The Court believes the trustee presented insufficient evidence to establish that any damage resulted.

This case was filed on October 23, 1991. As a practical matter, since he had not yet been appointed, the trustee would not have been able to act on the information in the debtors' schedules until at least October 25. The trustee has not indicated whether he notified the bank of the case, as would have been required by FRBP 2015(a)(4) if the debtors had listed a balance in the account. In fact, the Court wonders whether trustees would be well advised to ignore the debtors' reports of their account balances, and notify all banks listed in the schedules of the case and thus preclude them from relying on § 542(c) as a defense to turnover. In any event, no evidence was presented here to show when the checks were honored postpetition or when, if ever, the bank was notified of the case. This means it is possible the checks were all paid before the trustee was appointed, or at least before he would have contacted the bank if the actual filing date balance had been disclosed.

The Court also believes the trustee, having relied on an incorrect interpretation of the Bankruptcy Code and Rules, should not be allowed now to begin anew in an attempt to

prove any damages resulted from the debtors' error. Furthermore, while no evidence was presented on this point, it seems likely that in a typical case lay people who rely on their checkbook balance to tell them how much money they have in an account report that balance to their attorney. The attorney should probably ask them how they determined the balance and, when told it comes from the checkbook, then ask whether all the checks they have written have cleared the bank. If the debtors report such a balance but their attorney does not ask those questions, the Court wonders whether it would be appropriate to sanction the debtors for a resulting error in their schedules.

For these reasons, the Court concludes that the debtors are not obliged to turn over to the trustee the amount of money that was in their bank account on the day they filed for bankruptcy.

The foregoing constitutes Findings of Fact and Conclusions of Law under Rule 7052 of the Federal Rules of Bankruptcy Procedure and Rule 52(a) of the Federal Rules of Civil Procedure. A judgment based on this ruling will be entered on a separate document as required by FRBP 9021 and FRCP 58.