# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

_____

No. 06-6004EM

_____

| | | |
|---|---|---|
| In re: | * | |
| | * | |
| Gary Wayne Pyatt, | * | |
| | * | |
| Debtor. | * | |
| | * | |
| Gary Wayne Pyatt, | * | |
| | * | Appeal from the United States |
| Debtor - Appellant, | * | Bankruptcy Court for the Eastern |
| | * | District of Missouri |
| v. | * | |
| | * | |
| Tracy Brown, | * | |
| | * | |
| Trustee - Appellee. | * | |

_____

Submitted: July 26, 2006
Filed: August 31, 2006 (Corrected September 1, 2006)

_____

Before KRESSEL, Chief Judge, MAHONEY and VENTERS, Bankruptcy Judges.

_____

VENTERS, Bankruptcy Judge.

This is an appeal of the bankruptcy court's order granting the chapter 7 trustee's motion for the turnover of funds transferred from the Debtor's bank account postpetition for the payment of checks delivered to creditors prepetition. We have jurisdiction over this appeal pursuant to 28 U.S.C. § 158(b). For the reasons set forth below, we reverse the decision of the bankruptcy court.

# I.  STANDARD OF REVIEW

We review findings of fact for clear error and conclusions of law *de novo*.[1]  The issue on appeal – whether the Debtor is responsible for certain postpetition transfers of estate property – is purely legal, and will therefore be reviewed *de novo*.

# II.  BACKGROUND

The relevant facts are undisputed and straightforward.  The Debtor, Gary Wayne Pyatt, filed for protection under chapter 7 of the Bankruptcy Code on October 4, 2004.  Tracy A. Brown was appointed as the trustee ("Trustee") for the Debtor's case.  The Debtor's schedule of personal property (Schedule B) filed with his petition indicated that he had $300 in an account ("Account") at Southern Commercial Bank.  At the § 341 meeting of creditors on November 8, 2004, the Trustee learned that the Account actually had a balance of $1,938.76 on the date of filing.  The difference was attributable to checks written by the Debtor prepetition but which were honored by the bank postpetition.  There has been no suggestion or finding that the Debtor intentionally misrepresented the balance in the Account as of the petition date; we can only surmise that the Debtor's error in reporting the true balance was a result of the Debtor's diligence (or lack thereof) in "balancing" his checkbook.

The Trustee demanded that the Debtor turn over the $1,938.76, but the Debtor refused.  The Trustee then filed a motion for turnover which the bankruptcy court granted.  The court found, without taking additional evidence, that the $1,938.76 in the Account was, indeed, property of the estate and that it was the Debtor's obligation to restore those funds to the estate.  The Debtor argues here, as he did in the bankruptcy court, that the Trustee, not the Debtor, bears the responsibility of recovering estate property under these circumstances.

---

[1] *Kelly v. Jeter* (*In re Jeter*), 257 B.R. 907, 909 (B.A.P. 8th Cir. 2001).

## III.  DISCUSSION

Despite the seemingly common situation presented by this case – the recovery of property of the estate transferred by means of a check written prepetition but cashed postpetition – we have found only five reported cases addressing the question that naturally arises in these circumstances,  *i.e.*, who is responsible for replenishing the estate for these unauthorized postpetition transfers?  The cases are divided: two hold that the trustee bears the burden of recovering those funds from the creditors to whom they were transferred,[2] and three hold that the debtor is responsible for returning those funds to the estate.[3]

The bankruptcy court sided with the courts which hold the debtor responsible for replenishing the estate.  These courts reason that funds attributable to checks honored postpetition constitute property of the estate, even if the check is delivered to a creditor prepetition, because transfers by means of a check are deemed to occur when the check is honored.[4]  Therefore, they conclude, the Debtor is an "entity . . . in possession, custody, or control" of property of the estate with the duty to physically deliver those funds to the trustee pursuant to 11 U.S.C. § 542(a).

Following this line of reasoning, the bankruptcy court further opined that placing the onus of reimbursing the estate on the Debtor is appropriate because it advances the goal of equitable distribution among creditors; debtors are in a better

---

[2] *In re Taylor*, 332 B.R. 609 (Bankr. W.D. Mo. 2005); *In re Figueira*, 163 B.R. 192 (Bankr. D. Kan. 1993).

[3] *In re Maurer*, 140 B.R. 744 (D. Minn. 1992); *In re Sawyer*, 324 B.R. 115 (Bankr. D. Ariz. 2005); *In re Dybalski*, 316 B.R. 312 (Bankr. S.D. Ind. 2004).

[4] *See* Mo. Rev. Stat. § 400.3-101.  *See also*, *Barnhill v. Johnson*, 503 U.S. 393, 400-401, 112 S.Ct. 1386, 1390-91, 118 L.Ed.2d 39 (1992);  *In re Maurer*, 140 B.R. 744 (D. Minn. 1992); *In re Taylor*, 332 B.R. 609 (Bankr. W.D. Mo. 2005); *In re Sawyer*, 324 B.R. 115 (Bankr. D. Ariz. 2005); *In re Figueira*, 163 B.R. 192 (Bankr. D. Kan. 1993).

position to prevent, control or remedy the situation; and debtors retain the ability to decide if further action against the postpetition transferees is warranted and appropriate.

The cases holding the trustee responsible for avoiding the type of postpetition transfer at issue here also begin from the premise that the funds attributable to checks cashed postpetition are property of the estate, but they differ from the cases above in their characterization of a debtor's duties with respect to bank accounts. They have concluded that a debtor's duties with respect to bank accounts are governed by § 521(1) and Fed. R. Bank. P. 1007(b)(1) and 4002(3) rather than by §§ 521(4) and 542(a) because a bank account is technically not cash, it is a debt owed by the bank to the debtor in the amount of the funds in the account.[5] Section 521(1) and Rule 1007(b)(1) require a debtor to file a list of assets and liabilities, which assets would include "debts" owed to a debtor in the form of bank account balances, and Rule 4002(3) requires a debtor to "inform[ing] the trustee immediately in writing of the name and address of every person holding money or property subject to the [debtors'] withdrawal or order," if schedules have not yet been filed.[6] Thus, "[t]he statute and rules do not require debtors to withdraw the funds [in a bank account] but only to make the information available to the trustee."[7]

Upon the commencement of a chapter 7 case, the trustee is the representative of the estate with the responsibility to secure the property of the estate, to seek payment of debts owed to a debtor, and to give notice "as soon as possible . . . to every entity known to be holding money or property subject to withdrawal or order

---

[5] *Taylor*, 332 B.R. at 612; *Figueira*, 163 B.R. at 194.

[6] Fed. R. Bank. P. 4002(3).

[7] *Figueira*, 163 B.R. at 195.

of the debtor, *including every bank, savings, or building and loan association. . . .*"[8] So, these courts conclude, the burden of recovering postpetition transfers from a debtor's account should fall on a trustee, not the debtor.

This analysis is not perfect – a debtor does not actually fulfill the requirements of § 521(1) and Rule 4002(3) if the bank account balance reported fails to include checks outstanding as of the petition date – but, overall, making trustees responsible for avoiding and recovering postpetition transfers under these circumstances is legally and practically sound and better advances the Bankruptcy Code's goal of equal distribution among creditors.

Debtors' duties with regard to bank accounts are governed by § 521(1) and Rules 1007(b)(1) and 4002(3).[9] The fact that general deposit accounts are always subject to the checks of the depositor and are always payable on demand does not change the nature of a bank deposit as a debt owed by a bank to the depositor.[10] A debtor is not required to physically collect that debt on the filing date, but must report the extent of that debt, *i.e.*, the balance in the account, to the trustee. In that way, the purpose of Rule 4002(3) is achieved.

In this case, the Debtor failed to adequately perform his duties. He was under an obligation to report the actual balance in his bank account on the date of the petition and he failed to do this. As a result, the Trustee did not have the opportunity to prevent the outstanding checks from being cashed by the payee. Nevertheless, the

---

[8] Fed. R. Bank. P. 2015(a)(4).

[9] *Taylor*, 332 B.R. at 612; *Figueira*, 163 B.R. at 194.

[10] *See First Nat. Bank of Clinton v. Julian,* 383 F.2d 329, 338 (8th Cir. 1967) ("The general rule is that a deposit in a bank is presumed to be a general deposit and that the relationship created between the bank and the depositor is that of debtor and creditor . . . ."); 9 C.J.S. Banks and Banking § 270.

proper remedy in this situation is not a motion for turnover against the debtor because the debtor no longer had the money at the time the Trustee brought the motion,[11] and, despite suggestions to the contrary, the Trustee – not the Debtor – was in a better position to prevent this situation from happening and to remedy the consequences flowing therefrom.

A trustee is in a better position to prevent transfers by postpetition check because the trustee can do so without the risk of criminal liability. A debtor, on the other hand, runs the risk of being prosecuted for writing a bad check if he attempts to stop payment on an outstanding check on the eve of bankruptcy. Even though the debtor would likely prevail if he faced criminal charges for such conduct, presuming he acted without fraudulent intent,[12] it is still inappropriate and unnecessary to place the debtor between the "rock" of possible criminal prosecution and the "hard place" of defending a turnover action by the trustee.

A trustee also is in a better position to remedy the damage to the estate caused by postpetition transfers because the trustee is the only party authorized by the Bankruptcy Code to avoid postpetition transfers, pursuant to 11 U.S.C. § 549. The bankruptcy court alluded to the possibility that the Debtor might recover from the payees of the checks in the amount the court ordered the Debtor to turn over to the Trustee, but it did not specify, nor are we aware of, any Bankruptcy Code provision that authorizes a debtor to recover funds from postpetition transferees.

---

[11] *See Maggio v. Zeitz*, 33 U.S. 56, 63-64, 68 S.Ct. 401, 405, 92 L.Ed. 476 (1948) (holding that a summary proceeding for turnover against debtor is inappropriate where debtor no longer has possession of property). *But cf. Boyer v. Davis* (*In re U.S.A. Diversified Products, Inc.*), 193 B.R. 868 (Bankr. N.D. Ind. 1995) (suggesting that *Maggio* has been effectively overruled by the enactment of 11 U.S.C. § 542(a) which allows a trustee to recover the asset or the "value of such property").

[12] *See, e.g.*, Mo. Rev. Stat. § 570.125(1).

Moreover, because a trustee is the only party the Code authorizes to recover postpetition transfers, placing responsibility on the trustee for doing so under these circumstances is also the only option that advances the goal of equal distribution among creditors. If a trustee recovers from creditors who receive the postpetition transfers of the kind at issue here, those creditors' claims can could be reinstated to the extent of the recovery, and the trustee could then equally distribute that recovery among all of the unsecured creditors. In contrast, if a debtor is held accountable for checks cashed postpetition (and actually has the money to repay those funds), the trustee's subsequent distribution of those funds would not be equal among creditors because the creditors who have received the unauthorized postpetition transfers will have already been paid 100 percent of what they were owed (to the extent of the transfers), whereas other creditors would most likely receive less than 100 percent.

Finally, whether characterized as concern for fundamental fairness or practicality, it simply makes more sense to directly collect the postpetition transfers from the creditors who received the transfers rather than from the debtors who, presumably, innocently made the payments prepetition. In a perfect world, there would be a place on a debtor's schedules or statement of financial affairs where outstanding checks could be readily listed, thereby alerting the trustee of the possible need to notify the bank to stop payment on those checks. In the absence of such perfection, however, debtors should be encouraged to disclose that information to their attorneys who, in turn, can communicate that to the trustee in some fashion. And the transfers that slip through the cracks could be avoided by the trustee.

## V. CONCLUSION

For the reasons stated above, we reverse the bankruptcy court's order granting the Trustee's motion to compel turnover.

KRESSEL, Chief Judge, concurring.

While I agree with the majority's conclusion that the bankruptcy court's turnover order should be reversed, I differ entirely from the majority in my reasons and therefore write separately. First of all, I disagree with the basic rationale of the opinion that the trustee is in a better position than the debtor is to collect what was, admittedly, property of the estate. When a case is filed, the balances in the debtor's bank accounts are property of the estate. In cases like this one, where there are outstanding checks that will be presented to the bank within days or even hours of the commencement of the case, the trustee is virtually helpless to prevent the loss of the asset. The debtor, on the other hand, is perfectly capable of preventing that loss. The debtor can make sure that there are no outstanding checks when the case is filed by not writing checks in the period before filing, by delaying filing the petition or by writing checks far enough in advance so that they have been paid before the petition is filed. The debtor can provide actual notice of the commencement of the case to the bank, thus, creating a duty on the part of that institution to not pay the checks when they are presented post-petition or the debtor can also stop payment on all outstanding checks when the case is commenced.[13]

But frankly, I consider all of this to be beside the point. This is not a question of what is the better policy, but rather, what the statute requires. As the majority indicates in its opinion, there is no doubt that the funds on deposit in the debtor's

---

[13] The majority raises the specter of potential criminal liability if the debtor stops payment on outstanding checks. It cites *Mo. Revised. Stat. § 570.125(1)* for that fear. That Missouri statute makes it a crime to fraudulently stop payment of an instrument if a person knowingly, with the purpose to defraud, stops payment on a check or draft given in payment for the receipt of goods or services. It seems to me that there is clearly no purpose to defraud if a bankruptcy debtor stops payment on a check in fulfillment of the debtor's duties under a federal statute.

account when the case was filed was property of the estate. This is true whether one thinks of that property as cash, a credit of some sort, or a debt owed by the bank to the debtor. Once that concession is made, then I do not think it can be gainsaid that the debtor is, at a minimum, an entity in control of that property, from the moment the case is commenced to the time the outstanding checks are presented to and paid by the bank. There may be others who are under the same obligation, including the bank itself, but the debtor is certainly one of the entities who has a statutory obligation to turn the funds over to the trustee. As a result of this clear statutory mandate, I would conclude that the debtor, in fact, violated his obligations under § 542(a) by not turning over to the trustee the funds in his bank account at the moment he filed his case.

While there may be remedies against the debtor for his failure to comply with his statutory responsibility, turnover is not among them. As the Supreme Court said in *Maggio v. Zeitz* (*In re Luma Camera Service, Inc.*), 333 U.S. 56 (1948), in referring to a turnover proceeding,

> It is essentially a proceeding for restitution rather than indemnification, with some characteristics of a proceeding in rem; the primary condition of relief is possession of existing chattels or their proceeds capable of being surrendered by the person ordered to do so. It is in no sense based on a cause of action for damages for tortious conduct such as embezzlement, misappropriation or improvident dissipation of assets.

333 U.S. at 63.

The Court goes on to say that the remedy is "appropriate only when the evidence satisfactorily establishes the existence of the property or its proceeds, and possession thereof by the defendant at the time of the proceeding." 333 U.S. at 63-64. Thus, it is not only common sense that a person cannot be ordered to turn over property that the person does not have, the Supreme Court has clearly and

9

unequivocally held such in *Maggio*. A turnover order must be supported by "proof that the property has been abstracted from the bankruptcy estate and is in the possession of the party proceeded against. It is the burden of the trustee to produce this evidence, however difficult this task may be." *Oriel v. Russell*, 278 U.S. 358 (1929).

In this case, not only did the trustee not present evidence that the debtor was in possession of the property which was the subject of the proceeding, but conceded that he was not. On this point, the trustee relies on the language "during the case." However, I think this misconstrues the statute, both grammatically and legally and flies in the face of the court's holding in *Maggio*. The language quoted imposes the turnover obligation on any party into whose possession property of the estate comes during the case, but that does not mean that that obligation survives that entity's loss of possession.

I think the trustee is mistakenly treating § 542 as creating a recovery or damage remedy. Nowhere does the statute explicitly grant the trustee any rights. Compare this to §§ 544, 545, 547, 548, and 549, all of which explicitly grant rights to the trustee and define them. Section 550 goes on to indicate from whom the trustee may recover property. Thus, on its face, § 542 does not give the trustee a remedy or a cause of action, but rather, imposes a duty on others. The trustee is limited to enforcing that duty. Notably, § 542 is not listed in § 550 and thus is not subject to the statutory limitation that "the trustee is entitled to only a single satisfaction under subsection (a) of this section." 11 U.S.C. § 550(d). The trustee's interpretation of the statute would allow the trustee to obtain turnover from every single entity into whose possession a piece of property came during the case. It would also allow, for example, the trustee to obtain an order of turnover from the debtor, of a car that had been earlier repossessed by a secured creditor. He would also be entitled to a turnover order directed to every member of the family who drove the car before it was repossessed. Obviously, this cannot be the law. In fact, it is to the contrary.

> Turnover orders should not be issued, or approved on appeal, merely on proof that at some past time property was in possession or control of the accused party . . . .

*Maggio*, 333 U.S. at 65. In the same vein, obligating the entity in possession to turnover either the property or its value is not a temporal provision, but only an alternative obligation imposed upon the entity in possession, that does not survive the entity's loss of possession of the property.

In footnote 11, the majority dismisses *Maggio* by citing to an Indiana bankruptcy court's opinion "suggesting that *Maggio* has been effectively overruled by the enactment of 11 U.S.C. § 542(a) . . . ." Not only do I not think that § 542(a) overruled *Maggio*, I think it is a codification of it. The Bankruptcy Act that existed before October 1, 1979, contained no turnover obligation. That obligation was judicially created and in existence upon the enactment of the Bankruptcy Reform Act of 1978, P.L. 95-598. The Act included § 542. "The normal rule of statutory construction is that if Congress intends for legislation to change the interpretation of a judicially created concept, it makes that intent specific." *Midlantic Nat'l Bank v. N.J. Dept. of Envtl. Prot.*, 474 U.S. 494, 501 (1986). "The court has followed this rule with particular care in construing the scope of bankruptcy codifications." *Kelly v. Robinson*, 479 U.S. 36, 47 (1986). To the extent that the statutory language might have some ambiguity in it, the Supreme Court has told us that we are to assume that the law is the same under the Bankruptcy Code as it was under the Bankruptcy Act.

In summary, I think that while the debtor violated his obligations under § 542(a) by allowing the transfer of funds out of his bank account after he filed his petition and while I think that the trustee undoubtedly has remedies as a result of that transfer against the debtor and others, I would hold that turnover is not one of those remedies. Requiring turnover of property or its value from the debtor (or for that matter, from any entity) who is not in possession of that property is contrary to

common sense, Supreme Court precedent, and the statute itself.  I therefore concur in the majority decision reversing the bankruptcy court.