**In re Alesia MINTER–
HIGGINS, Debtor.**

**No. 05–63591 JPK.**

United States Bankruptcy Court,
N.D. Indiana,
Hammond Division.

March 23, 2007.

Stacia L. Yoon, Esq., Merrillville, IN, for the Chapter 7 Trustee.

Kevin Relphorde, Gary, IN, for the Debtor Alesia Minter–Higgins.

### ORDER ON MOTION TO AMEND JUDGMENT AND ORDER PURSUANT TO BANKRUPTCY RULE 9023

J. PHILIP KLINGEBERGER, Bankruptcy Judge.

This order determines the Motion to Amend Judgment and Order Pursuant to Bankruptcy Rule 9023 filed by Stacia L. Yoon, as Trustee of the Chapter 7 bankruptcy estate of Alesia Minter–Higgins in the above-designated case. The motion and an accompanying brief were filed on November 30, 2006. No reply brief was filed by or on behalf of the debtor. A hearing was held on the motion on February 16, 2007, at which both Trustee Yoon and the debtor appeared. At that hearing, the Court stated the determination which would be made on Trustee Yoon's motion, a determination which is now memorialized by this order.

The contested matter which is the subject of this order was commenced on August 23, 2006, by Trustee Yoon's filing of a Motion for Turnover of funds held in the

debtor's bank account on the date of the filing of her Chapter 7 petition on July 5, 2005. On September 7, 2006, the debtor, by counsel, Kevin B. Relphorde, filed an objection to the Trustee's motion. A hearing was held with respect to the motion and the debtor's objection to it on November 21, 2006. Alesia Minter–Higgins testified at that hearing concerning negotiable instruments (checks) which she had drawn on the account, and debit card credits requested, in advance of the filing of her petition, but which checks and debit requests were not honored by the drawee bank until after the filing of the petition. In accordance with her testimony, the items at issue pursuant to her objection were those designated as the following in paragraph 3 of the objection filed in response to the Trustee's motion for turnover:

checks:
| | |
|---|---|
| # 3443 | $34.53 to Ultra Foods on 7/1/05 |
| # 3447 | $4.37 to Ultra Foods on 7/2/05 |
| # 3448 | $115.00 to Shabach Pentecostal Church |
| Debits | $2.17 and $3.17 to Speedway on 7/1/05 |
| | $4.77 to Ulra Foods on 7/2/05 |
| | $30.14 to Marathon Ashland on 7/5/05 |

And schedule payments made to creditors
$96.93 to Citibank Cards
$124.46 to Credit Union Card Center
(Inland/Advance FCU Credit Card

These items total $415.40, and the debtor contended at the hearing that because these items were outstanding and had not yet been finally charged to her account on the date of the filing of her petition, the amount of her account at Advance Federal Credit Union on the date of the filing of her petition should be diminished by these items, and thus that the Trustee's motion for turnover should be denied.[1]

At the conclusion of the hearing, the Court stated oral findings of fact and conclusions of law pursuant to Fed.R.Bankr.P. 7052/Fed.R.Civ.P. 52(a), and orally stated its ruling against the Trustee. That ruling was memorialized by docket record entry # 25, entered on November 22, 2006, which stated the following:

> Docket Entry: Hearing held on 11/21/06 RE:(related document(s)[)] 14Motion for Turnover of Property filed by Stacia L. Yoon. APPEARANCES: Alesia Minter–Higgins, Atty. Relphorde on behalf of Debtor and Atty. Yoon on behalf of Trustee. The court finds based upon the evidence submitted at the hearing and the findings of fact and conclusion of law stated on the record the trustee's motion is DENIED.

Trustee Yoon filed a timely motion to alter or amend the judgment entered on November 22, 2006. This matter is now before the Court pursuant to Fed. R.Bankr.P. 9023/Fed.R.Civ.P. 59.

### I Determination on the Motion to Alter or Amend

The underlying facts in this contested matter are that on July 5, 2005, the debtor maintained a demand deposit account at Advance Federal Credit Union which had a balance of $383.13 on July 5, 2005. Prior to the date of the filing of the petition, the debtor had issued checks drawn on that account, and had initiated debit transfers drawn on that account, which were not finally honored by Advance Federal Credit Union until after the date of the petition: those items are designated above. Trustee Yoon argues that funds on deposit in the debtor's account on the date of her filing of her petition constituted property of the debtor's Chapter 7 bankruptcy estate and that in accordance with the decision of the United States Court of Appeals for the Seventh Circuit in *In re USA Diversified Products, Inc.,* 100 F.3d 53 (7th Cir.1996), funds subject to outstanding checks or debit requests were not transferred to the payees of those checks until after the date of the filing of the

---

1. The Trustee's motion sought turnover of "Advance FCU bank funds in the amount of $383.13", representing the actual balance in the debtor's account on July 5, 2005.

petition and thus remained property of the debtor's Chapter 7 estate subject to turnover by the debtor.

The amount at stake in this contested matter is obviously not large; however, issues regarding administration of Chapter 7 bankruptcy cases implicated in this contested matter are enormous. The law with respect to those issues is ill-defined and, as will be seen, relatively complicated.

■■■ We start with the nature of the motion by which the Trustee initiated the contested matter subject to this decision, a motion for turnover directed to the debtor.

2. The Court deems a debtor to be an "entity" within this provision; *See,* 11 U.S.C. § 101(15) ["entity"]; 11 U.S.C. § 101(41) ["person"].

3. Why, one might ask, didn't the Trustee direct the turnover motion to Advance Federal Credit Union? After all, 11 U.S.C. § 542(b) might appear to authorize such a motion, stating as it does the following:

(b) Except as provided in subsection (c) or (d) of this section, an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee, except to the extent that such debt may be offset under section 553 of this title against a claim against the debtor.

However, 11 U.S.C. § 542(c) would insulate a financial institution in the position of Advance Federal Credit Union in the instances of this case, as there is no evidence that that entity had either actual notice or actual knowledge of the commencement of the debtor's case. That section states:

(c) Except as provided in section 362(a)(7) of this title, an entity that has neither actual notice nor actual knowledge of the commencement of the case concerning the debtor may transfer property of the estate, or pay a debt owing to the debtor, in good faith and other than in the manner specified in subsection (d) of this section, to an entity other than the trustee, with the same effect as to the entity making such transfer or payment as if the case under this title concerning the debtor had not been commenced.

Turnover motions of the nature of those at issue here are provided for by 11 U.S.C. § 542(a), which states as follows:

(a) Except as provided in subsection (c) or (d) of this section, an entity[2], other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.[3]

Thus, Advance Federal Credit Union was insulated from any attempt which might have been made by the Trustee to obtain the July 5, 2005 account balance from it.

Why, one might ask, didn't the Trustee seek to recover the amount of the non-finalized transfers from the transferees (putting aside the economic irrationality of filing multiple adversary proceedings pursuant to Fed. R.Bankr.P. 7001(1) to recover $383.13 from multiple transferees)? In *Barnhill v. Johnson,* 503 U.S. 393, 112 S.Ct. 1386, 118 L.Ed.2d 39 (1992), the United States Supreme Court determined that for the purposes of preference recovery under 11 U.S.C. § 547(b), a "transfer" is made with respect to a negotiable instrument when that instrument is finally honored by the drawee financial institution. Thus, the Trustee could not utilize 11 U.S.C. § 547 to seek to recover a preference from a transferee, in that that section requires the transfer to be made on the date of the filing of the petition or within a specified period prior to that date; 11 U.S.C. § 547(b)(4). Additionally, review of the list of the payees will disclose that the Trustee could almost certainly not satisfy the provisions of Fed.R.Bankr.P. 9011 with respect to an action seeking to utilize the avoidance powers of 11 U.S.C. § 548 [which deal with fraudulent transfers] to recover the transfers from the transferees. No other section of the Bankruptcy Code which allows a Chapter 7 trustee to exercise what are termed "avoidance powers" could have come into play with respect to these transfers.

But what of 11 U.S.C. § 549(a), which states:

An apparently little-known decision of the United States Supreme Court has some relevance to the remedy sought by the Trustee under 11 U.S.C. § 542(a). In *Maggio v. Zeitz*, 333 U.S. 56, 68 S.Ct. 401, 92 L.Ed. 476 (1948), the United States Supreme Court held that the subject of a turnover action must be in the actual possession of the target of that action. In the context of this case, the $383.13 balance of the Advance Federal Credit Union account on the date of the petition was no longer in existence as of the date of the filing of the Trustee's motion for turnover: as the evidence in the case establishes, the honoring of the pre-petition checks/ debit transfers completely transferred the balance as of the date of the petition to transferees within a short time after the filing of the petition. Thus, under *Maggio*, the Trustee's motion for turnover would not state a cause of action. However, most courts have held that *Maggio* was rendered ineffective by provisions of 11 U.S.C. § 542(a), which provides that the Trustee may require delivery of "property *or the value of*

*such property* " (emphasis supplied), thereby allowing the Trustee to utilize a turnover motion to obtain the *value* of transferred property even if the target of the turnover order is no longer in possession of that property. This Court does not agree with that construction of 11 U.S.C. § 542(a), and does believe that *Maggio* still retains viability. In this Court's view, the phrase "or the value of such property" refers to a circumstance in which the transferee who is in *actual possession* of property subject to turnover at the time of the demand for turnover may elect to retain the property and instead pay the trustee the value of the property so retained. However, this Court's view has been precluded by the decision of the United States Court of Appeals for the Seventh Circuit in *USA Diversified Products, Inc.*, 100 F.3d 53, 56 (7th Cir.1996), in which the Seventh Circuit determined that *Maggio* has been abrogated by the phrase "or the value of such property". Thus, constrained as it is by decisions of the United States Court of Appeals for the Seventh

**(a)** Except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate—

**(1)** that occurs after the commencement of the case; and

**(2)(A)** that is authorized only under section 303(f) or 542(c) of this title; or

**(B)** that is not authorized under this title or by the court.

Under the controlling law of *Barnhill v. Johnson*, the transfers were made post-petition, and thus might seemingly be made subject to this statute. However, 11 U.S.C. § 349(a)(2)(B) precludes recovery of post-petition transactions if they are authorized by either Title 11 of the United States Code or by the Court. 11 U.S.C. § 362(b)(11) states an exception to the operation of the automatic stay of 11 U.S.C. § 362(a), by providing that "the presentment of a negotiable instrument and the giving of notice of and protesting dishonor of such an instrument" do not violate the automatic stay. This provision very clearly, and quite simply, means that the presentment by the payees of the debtor's checks

and debit requests to Advance Federal Credit Union subsequent to the date of the petition was excepted from the operation of the automatic stay, and was therefore an authorized transfer of property from the debtor's account at that financial institution under 11 U.S.C. § 549(a)(2)(B). Thus, the Trustee was precluded from seeking the amount of the transfers from the payees of the checks/debits under 11 U.S.C. § 549(a).

We thus have a circumstance in which the Trustee could not have recovered the $383.13 of transfers from the transferees as a matter of law. Even if some legal theory would have allowed the Trustee to seek recovery from the transferees, a separate contested matter or adversary proceeding would have been required with respect to each one of the transfers, thereby making it economically infeasible to pursue the transferees for the $383.13 recovery sought by the Trustee on behalf of the Chapter 7 estate. Both the law and the economic circumstances dictated the Trustee's decision to seek to recover the $383.13 from the debtor.

Circuit, the Court must determine that the Trustee's procedural mechanism of a turnover order under 11 U.S.C. § 542(a) is proper.

■■■■ We next confront the issue of whether the amount in the debtor's demand deposit account on the date of the filing of her bankruptcy petition constituted property of her bankruptcy estate, despite her having issued checks and debit transfer requests against that account which had not yet been finally honored by the drawee financial institution. 11 U.S.C. § 541(a) states that the commencement of a bankruptcy case "creates an estate". The § 541(a) estate is a ravenous creature, akin to Pac-man/Ms. Pac-man gobbling every conceivable interest a debtor could have in property, including those described in 11 U.S.C. § 541(a)(1) as "all legal or equitable interests of the debtor in property as of the commencement of the case". *Barnhill*, *supra.*, clearly provides that transfer of funds from the debtor's Advance FCU account by final honoring of checks/debit transfers subsequent to the date of the petition did not affect the $383.13 balance of that account on the petition date as property of the estate. Thus, clearly, the $383.13 balance was property of the estate on the date of the filing of the debtor's petition.[4]

Now we come to the crux of the case. As noted previously, the Trustee was precluded by *Barnhill* from seeking recovery of the amounts of the pre-petition checks/debit transfers from the transferees under 11 U.S.C. § 547(b). Because obviously no actual fraud was involved in these transactions—and even addressing the concept of "constructive" fraud under 11 U.S.C. § 548(B), preclusive because these transfers almost certainly involved the debtor's receipt of equivalent value under § 548(B)(i)—the Trustee could not utilize 11 U.S.C. § 548 against the transferees. As noted above, 11 U.S.C. § 549(a)(2)(B) insulated the transferees from any assertion of recovery of the transferred amounts from them as post-petition transactions. Every, or nearly, every circumstance under which a trustee may recover transferred property for the benefit of a bankruptcy estate involves recovery from the transferee, and not from the transferor debtor. For example, 11 U.S.C. § 547 does not authorize recovery from a debtor who made the preferential transfer, but only from the preferential transferee. 11 U.S.C. § 548, and similar provisions of state law that deal with actual and constructive fraudulent transfers, authorize recovery from the transferee and not from the transferor. One obvious reason for the focus on *transferee-only* recovery is to avoid the result that the transferor debtor pays twice—once to the transferee (a done deal) and then again to the Trustee or to itself (e.g., a Chapter 11 debtor seeking recovery of transfers). In this case, we have a circumstance in which the Trustee seeks to recover, *from the*

---

4. It is interesting to note that for various reasons which are not pertinent here, courts have developed separate tests for when a "transfer" occurs under different provisions of the Bankruptcy Code. For example, pursuant to the decision in *Barnhill*, a transfer for the purposes of a preference action under 11 U.S.C. § 547(b) occurs when the negotiable instrument is *finally* honored by the drawee bank. However, for the purposes of determining the "new value" defense against a preference action pursuant to 11 U.S.C.

§ 547(c)(4), a "transfer" occurs when a negotiable instrument is delivered to the payee; *See, Gordon Gouveia, Trustee v. Seneca Petroleum Co., Inc.*, 334 B.R. 416 (Bankr.N.D.Ind. 2005). Thus, there is some fluidity in the concept of transfer with respect to negotiable instruments, but that fluidity will not affect the solidification of the fact that the $383.13 balance in the Advance FCU account constituted property of the debtor's bankruptcy estate.

*transferor* debtor, the value of property transferred by her which could not be recovered from the transferees. That seems unfair in light of the Bankruptcy Code's transfer avoidance/recovery provisions.

However, many provisions of the Bankruptcy Code are unfair, and it may well be that the law is that under these circumstances—even though transfers could not be recovered from transferees—the transferor/debtor is a viable recovery target. Unfortunately for the Trustee, the Court does not view the law to be that unfair.

■ It must be noted that the effect of the Trustee's action, if successful, is that the debtor has lost $383.13 by the honoring of the checks/debit transfers. The debtor then gets to lose another $383.13 to the Trustee, arising from the simple fact that she made payments in the ordinary course of her life to ordinary creditors, or with respect to ordinary transactions like a donation to a church, many of which obviously entailed transfers for the contemporaneous exchange of value as would be defined by 11 U.S.C. § 547(c)(1) if preference law were applicable.[5]

The key to the issues presented in this contested matter is 11 U.S.C. § 362(b)(11), which excepts the presentment of a negotiable instrument for payment from the operation of the automatic stay. The postpetition final honoring of payment on a negotiable instrument *ipso facto* diminish-

es property of the estate held in a demand deposit account, and that diminishment has been specifically authorized by Congressional enactment. The clear implication of § 362(b)(11) is a Congressional determination that the course of commerce run on the stream of payments effected by transfers of negotiable instruments, and now more sophisticated forms of transfer, must be maintained despite diminution in bankruptcy estates caused by the post-presentment of checks/debit transfers which will diminish a debtor's assets. The purpose of the automatic stay has been well-described in various cases. For example, in *Aiello v. Providian Financial Corp.*, 239 F.3d 876, 879 (7th Cir.2001), the following is stated:

> The automatic stay is primarily for the protection of the unsecured creditors as a group. The stay prevents (without need to ask a court for an injunction) a race by the creditors to seize the debtor's assets, a race that by thwarting the orderly liquidation of those assets would yield the creditors as a group less than if they are restrained. *In re Rimsat, Ltd.*, 98 F.3d 956, 961 (7th Cir.1996); *Martin–Trigona v. Champion Federal Savings & Loan Ass'n*, 892 F.2d 575, 577 (7th Cir.1989); *Maritime Electric Co. v. United Jersey Bank, supra*, 959 F.2d at 1204. But it is also for the debtor's protection, *id.; In re Hellums*, 772 F.2d 379, 381 (7th Cir.1985) (per

5. Checks written to Ultra Foods are almost certainly checks written for groceries, and without writing the check to Ultra Foods, the debtor wouldn't have received the groceries. Checks to Speedway and Marathon Ashland are almost certainly for fuel pumped into a vehicle, or other immediately received services or goods, paid for by debit immediately following the pumping of the gas, or receipt of the services/goods. The transfers to Citibank Cards and to Inland/Advance FCU are obviously payments made on credit card accounts; interestingly, the payment of $120.46

to Credit Union Card Center with respect to an Inland/Advance FCU credit card implicates 11 U.S.C. § 553, in that it appears that the debtor owed a debt to the entity with whom she maintains her demand deposit account. Presumably Advance FCU had a right of setoff against the debtor's account for any debt which she owed them had she not paid that debt on a current basis, a right which would have trumped the Trustee's assertion that $124.46 constituted property of the estate.

curiam); *In re Little Creek Development Co.*, 779 F.2d 1068, 1071 (5th Cir.1986). The purpose of 11 U.S.C. § 362(b)(11) was stated as follows in *Roete v. Smith*, 936 F.2d 963, 966 (7th Cir.1991):

As the district court appropriately noted, this subsection, which was added by Congress in 1984, was intended to be a clarifying amendment rather than a change in the law. *Morgan*, 804 F.2d at 1492. The legislative history of subsection (b)(11) indicates that Congress wanted to make clear that "the automatic stay is not intended to interfere with the rights of a holder of a negotiable instrument to obtain payment." *Id.* at 1492 n. 5. *See also* B. Weintraub, *Bankruptcy Law Manual* § 1.09(4) (1986) ("[Subsection (b)(11)], permits holders of checks drawn by the debtor to deposit them for the purpose of preserving their rights on the instruments despite the filing of a bankruptcy petition.").

In accord with the foregoing, it had been held even prior to the enactment of 11 U.S.C. § 362(b)(11) that presentment of a negotiable instrument subsequent to the filing of a bankruptcy petition did not violate 11 U.S.C. § 362(a); *Morgan Guaranty Trust Company of New York v. American Savings & Loan Assn.*, 804 F.2d 1487, 1492 (9th Cir.1986).

As evidenced by the foregoing, the diminishment of a debtor's bankruptcy estate due to the presentment of negotiable instruments/debit transfer requests subsequent to the filing of the petition has been specifically accepted by Congress. Why would it be that transferees under the circumstances of this case are completely insulated from any recovery to enhance property of the estate, while the transferor debtor must double pay in order to maintain the value of property diminished by unavoidable transfers? The answer is that no sound logical construction of applicable law could obtain that result.

There are very few reported decisions on the issue presented in this contested matter. In those few, the Trustee's position has been sustained approximately equally with the sustaining of that of the debtor.

The Court does not agree with the pro-debtor rationale adopted by cases such as *In re Pyatt*, 348 B.R. 783 (8th Cir. BAP 2006), *In re Taylor*, 332 B.R. 609 (Bankr. W.D.Mo.2005) and *In re Figueira*, 163 B.R. 192 (Bankr.D.Kan.1993). Those cases impose unrealistic obligations upon a Chapter 7 trustee and assume that the trustee is aware of a debtor's demand deposit accounts almost instantaneously with the filing of the petition—a circumstance which cannot realistically be expected to exist, particularly in light of the fact that nothing requires the debtor to disclose the existence of property of the estate until the filing of schedules which are not due to be filed, at the earliest, until 15 days after the filing of the petition; Fed.R.Bankr.P. 1007(c).

None of the cases which have sided with the Trustee's position have analyzed the issues with respect to the pronouncements of 11 U.S.C. § 362(b)(11), and thus the Court does not agree with those decisions, either; *see, In re Sawyer*, 324 B.R. 115 (Bankr.Ariz.2005); *In re Dybalski*, 316 B.R. 312 (Bankr.S.D.Ind.2004). These latter cases avoid full resolution of the following issues:

a. There is an inherent unfairness, as both *Sawyer* and *Dybalski* note, in having the debtor pay back something to the trustee that the trustee can't recover from transferees. That unfairness is mitigated by this Court's analysis.

b. The presentment of a check by the payee is not a matter within the control of the debtor. A check given even three months before the filing of the petition may not be presented until after the peti-

tion, thereby exposing the debtor to payment of the amount of that check to the trustee under circumstances which normally would have resulted in no liability whatsoever but for the delay in presentment of the draft.

c. *Dybalski* hypothesizes mechanisms which might be used by debtors to avoid the untoward result (acknowledged by the author of this decision) which it reaches, including making certain that all written checks clear an account as of the date of filing of bankruptcy, or utilizing cashier's checks rather than ordinary checks to pay bills on the eve of bankruptcy. Again, these hypothetical solutions beg the issue. A debtor has no control over when checks are presented, and thus waiting until all checks have cleared is not a viable alternative. Then, how would an ordinary person ever know that the circumstances presented by this case could be invested upon him/her/them when he/she/they file a Chapter 7 case, and thus know to utilize the precautionary measure of payment by cashier's check (putting aside the fact that a fee is charged for the use of a cashier's check thereby depleting the debtor's account). Most lawyers won't even be aware of the issues in this case, and there may be limits on the ability of lawyers to advise debtors under the circumstances of this case imposed by 11 U.S.C. § 528(a) in relation to payment or non-payment of pre-petition debts.

d. The results reached in cases like *Sawyer* and *Dybalski* actually encourage persons in difficult financial circumstances to not pay debts subject to unavoidable transfers as they can, and as they fall due, so that the amounts of those debts paid by the use of negotiable instruments do not have to be repaid to the trustee after the checks are cashed. This is not a salutary principle in debtor-creditor relationships, nor one endorsed by Congress.[6]

The consideration of the foregoing policy issues, in conjunction with what the Court believes to be very clearly defined law, dictates that the Trustee's position be denied.

█ Finally, in analyzing this case, the Court had some concerns about the impact of this decision on the possible gambit of a debtor's divestiture of estate assets by transferring monies in a demand account to various entities on the eve of bankruptcy. Clearly, the utilization of 11 U.S.C. § 547(b) and of 11 U.S.C. § 549(a) to challenge this adventure is precluded. However, the primary mechanism for overcoming schemes in this circumstance would be 11 U.S.C. § 548, and the utilization of that section to thwart depletion of a bankruptcy estate is not inhibited by the Court's decision. The operative provision of that statute is 11 U.S.C. § 548(a)(1), which states:

(a)(1) The trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, *or any obligation* (including any obligation to or for the benefit of an insider under an employment contract) *incurred by the debtor*, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—(emphasis supplied)

The phrase "obligation incurred by the debtor" is a different concept from a "transfer" made by the debtor; *See, Global Distribution Network, Inc.*, 949 F.2d 910 (7th Cir.1991). While under *Barnhill*, a "transfer" with respect to a negotiable

---

**6.** This is so especially when it is considered that under 11 U.S.C. § 547(c)(8), *every* transfer of less than $600.00 to a transferee by an individual whose debts are primarily consum-er debts is insulated from preference recovery, and under 11 U.S.C. § 547(c)(9), non-consumer debtors' transfers of less than $5,000.00 are so insulated.

instrument is not made until the drawee bank finally credits the instrument against the depositor's account, the debtor incurs an obligation at the time a check is written and put into the stream of commerce to the payee. This obligation is enforced by provisions of the Uniform Commercial Code which provide that the giving of a negotiable instrument carries with it warranties that include that upon presentment of that instrument, payment will be made by the drawee. As soon as a check is given to the payee or put into the stream of commerce for delivery to the payee, the debtor cannot renege on this obligation without either stopping payment (which preserves property for the benefit of the estate) or by having insufficient funds in the account to allow for the honor of the draft (which again preserves property of the estate). If the check is negotiated under circumstances which cause *the incursion of the obligation evidenced by the negotiable instrument* to fall within the provisions of 11 U.S.C. § 548, the Court's decision does not impair the ability of trustees to utilize that section for recovery from the transferees of the draft.

This decision relates to the Trustee's motion pursuant to Fed.R.Bankr.P. 9023. The Trustee has requested that the Court alter or amend its judgment for which findings of fact and conclusions of law were stated orally on the record on November 21, 2006 and which was then determined by the Court's docket order of November 22, 2006. The Court grants the Trustee's motion to the extent that the foregoing order is amended by supplanting it with this written decision. The Trustee's motion is denied to the extent that the Trustee seeks to alter the result of denial of her motion for turnover.

IT IS ORDERED that the Trustee's Motion to Amend Judgment and Order Pursuant to Bankruptcy Rule 9023 filed on November 30, 2006 is granted to the extent that the oral findings of fact and conclusions of law stated at the hearing held on November 21, 2006 and the order entered of record on November 22, 2006, are supplanted by this written decision.

IT IS FURTHER ORDERED that the foregoing motion is denied to the extent that the Trustee seeks a determination by the Court that her motion for turnover should be granted.