**In re Janice B. MEADOWS, Debtor.**

No. 06–30887.

United States Bankruptcy Court,
S.D. Ohio,
Western Division at Dayton.

Jan. 7, 2008.

Lester R. Thompson, Dayton, OH, for Debtor.

**Decision on Order Granting Motion for Sanctions Under 11 U.S.C. § 362(k)(1) and Ordering Other Matters**

GUY R. HUMPHREY, Bankruptcy Judge.

The issues in this contested matter are whether Buckeye Check Cashing, Inc., dba CheckSmart ("Buckeye") willfully violated the automatic stay provided by 11 U.S.C. § 362(a) and, if so, what is the appropriate remedy for such a violation. Specifically, the stay violation issue is whether Buckeye's retention of funds received from the postpetition presentment of a Chapter 13 debtor's check constitutes a willful violation of the automatic stay once Buckeye received notice of the bankruptcy. This court has jurisdiction over this contested matter pursuant to 28 U.S.C. § 1334 and

this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (E) and (O).

### Findings of Fact

Buckeye's business provides short-term loans to individuals at high effective interest rates. Cf. *Brewer v. QC Fin. Svcs. Inc. (In re Brewer)*, 313 B.R. 795, 796 (Bankr.E.D.Wis.2004). The loan is paid by a post-dated check provided by the borrower for the principal and the fees the entity charges for the loan. *Id.* In this contested matter, the Debtor, Janice B. Meadows ("Meadows"), entered into a loan transaction on April 9, 2006 and agreed to pay $460 by April 23, 2006. Joint Exhibit A. The interest rate was calculated and disclosed on the contract to be at an annual percentage rate of 391.07%. *Id.* The parties agree the post-dated check provided by Meadows (the "check") constituted a negotiable instrument (Doc. 47, ¶ 3).

On April 16, 2006, one week before the loan was due to be re-paid, Meadows filed her petition for relief under Chapter 13 of the Bankruptcy Code (Doc. 1). The Notice of the Bankruptcy was issued by the Clerk on April 20, 2006 (Doc. 8) and filed on April 22, 2006 (Doc. 9; Doc. 47, ¶ 6). The Bankruptcy Noticing Center served the notice by regular mail on April 22, 2006 (Doc. 9; Doc. 47, ¶ 7). On April 23, 2006, Buckeye negotiated the check consistent with the April 9, 2006 loan documentation (Doc. 47, ¶ 8).

It is undisputed that Buckeye was scheduled on Schedule F as having an unsecured non-priority claim for $460 (Doc. 1). Buckeye was scheduled and noticed at an address of 4212 Linden Avenue, Dayton, Ohio 45432–3020 (Doc. 1), an address at which Pagle Helterbrand, Vice President of Corporate Operations for Buckeye ("Helterbrand"), testified that Buckeye has transacted business at all relevant times (Doc. 54, p. 35). However, Helterbrand testified that Buckeye did not receive notice of the bankruptcy at that time (Doc. 54, p. 24). On June 5, 2006, Meadows' counsel sent a letter to Buckeye at that address noting the Chapter 13 filing and seeking a return of the $460 received by Buckeye from the negotiation of the check (Joint Exhibit B) (the "funds"). The June 5, 2006 letter erroneously listed the amount of the check as being $510, instead of $460 (Joint Exhibit C).

On June 11, 2007, about one year after Meadows' counsel sent the demand letter to Buckeye, Meadows filed a motion requesting the court find that Buckeye violated the automatic stay and seeking unspecified damages (the "Stay Violation Motion") (Doc. 29). The Stay Violation Motion, unlike the bankruptcy notice and June 5, 2006 letter, was sent to four different addresses, which Meadows' counsel apparently thought were addresses of Buckeye, including a Texas address. Helterbrand testified that Buckeye received the motion on June 26, 2007 as a result of it having been faxed to it by an unrelated entity in Texas (Doc. 54, p. 24; Buckeye Exhibit D).

Upon receiving the Stay Violation Motion, Buckeye made multiple attempts through a paralegal in Buckeye's in-house legal department, Ms. Serena McCoy, to contact Meadows' bankruptcy counsel to offer payment of $510 to Meadows as a refund of the funds obtained through the negotiation of the check (Buckeye Exhibit E; Doc. 54, p. 25–27). After attempts to contact Meadows' counsel failed, Ms. McCoy, on August 15, 2007, sent a letter to Meadows' counsel offering payment of $510 [1] with the condition that Meadows

---

1. The court does not attach any significance to Buckeye choosing to adopt the figure from the Debtor's counsel's June 5, 2006 letter.

sign a general release, releasing Buckeye from all liability and agreeing to withdraw the Stay Violation Motion (Joint Exhibit C). Helterbrand testified that Buckeye's offers to return the funds obtained through negotiation of Meadows' check were always conditioned on Meadows signing the general release (Doc. 54, p. 31). Meadows has not agreed to this condition and the funds continue to be held by Buckeye.

Buckeye filed an objection to the Stay Violation Motion (Doc. 34), noting that it had no prior notice of the bankruptcy or the June 5, 2006 letter (except as an attachment to the Stay Violation Motion), the actions of Buckeye of retaining the funds were excepted from the automatic stay by virtue of 11 U.S.C. § 362(b)(11)[2], and, even if not, no willful or intentional actions were taken by Buckeye that could give rise to damages under 11 U.S.C. § 362(k)(1)[3].

### Legal Issues Presented

The legal issue presented to the court for resolution is whether Buckeye has willfully violated the automatic stay of the Bankruptcy Code, 11 U.S.C. § 362(a), by retaining the funds received from the presentment of Meadows' check after it received notice of Meadows' bankruptcy case.

Meadows concedes that the check was a negotiable instrument and that by virtue of § 362(b)(11), Buckeye did not violate the automatic stay by presentment of the check. However, Meadows argues that Buckeye willfully violated the stay once it received notice of her bankruptcy and did not return the funds to her bankruptcy estate and continues to violate the stay by retaining the funds. Meadows argues that Buckeye's offer to return the funds conditioned upon her signing and returning a general release in favor of Buckeye does not absolve Buckeye from responsibility for violating the stay.

Buckeye argues that its actions were protected by § 362(b)(11), added to the Bankruptcy Code as part of the Bankruptcy Reform Act of 1984[4], which is a stay exception for presentment of a check, and that Meadows' sole remedy would be an adversary proceeding pursuant to § 549[5] for the return of the funds as a post-petition transfer. Nevertheless, Buckeye has established that it has repeatedly offered to return the funds to Meadows, on the condition that Meadows sign and return the general release prepared by Buckeye. Buckeye argues that by virtue of § 362(b)(11) it was authorized to present the check for payment and that since

**2.** 11 U.S.C. § 362(b)(11) states that "[t]he filing of a petition ... does not operate as a stay ... under subsection (a) of this section, of the presentment of a negotiable instrument and the giving of notice of and protesting dishonor of such an instrument."

**3.** 11 U.S.C. § 362(k)(1) states, in relevant part, "an individual injured by any willful violation of the stay provided by in this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."

**4.** Pub.L. No. 98–353, § 441(b)(5). It was originally codified as § 362(b)(10), but was re-designated as § 362(b)(11) in 1986. Pub.L. No. 99–554, § 283(d)(2). See *Collier on Bankruptcy*, ¶ 362.LH[4][b], p. 362–136. (15th ed. rev.)

**5.** 11 U.S.C. § 549 states, in relevant part, that "(a) Except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate—

(1) that occurs after commencement of the case; and

(2)(A) that is authorized only under section 303(f) or 542(c) of this title; or

(B) that is not authorized under this title or by the court."

that section authorized that conduct, the funds received from the negotiation of Meadows' check were not property of Meadows' bankruptcy estate. Buckeye argues that it offered the payment of the $510 on the condition of Meadows signing a general release simply to avoid Meadows need to file such an adversary proceeding.

### Analysis

### The Funds are Property of the Debtor's Bankruptcy Estate

■ Upon the filing of Meadows' Chapter 13 bankruptcy case on April 16, 2006, § 362(a) imposed a stay as to certain actions. In addition, § 541(a) created a bankruptcy estate consisting of the property interests described by § 541(a), subject to the exceptions and limitations provided by §§ 541(b) and (d).[6] *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983). Section 362(a)(3) operates as a stay of "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." However, § 362(b)(11) provides that the filing of a bankruptcy case does not operate as a stay of "the presentment of a negotiable instrument and the giving of notice of and protesting dishonor of such an instrument." As noted, Meadows has conceded that her check was a negotiable instrument and that Buckeye's presentment of her check for payment did not violate the stay by virtue of § 362(b)(11). However, Meadows argues that Buckeye is violating the automatic stay, particularly § 362(a)(3), by continuing to retain the funds after Buckeye received notice of her bankruptcy.

The scope of § 541(a)(1) is intended to be broad. *Id.* at 204–05, 103 S.Ct. 2309. In this case, the funds in Meadows' bank account on the date of the filing of her case were property of her bankruptcy estate pursuant to § 541(a)(1). *Franklin v. Kwik Cash of Martin (In re Franklin)*, 254 B.R. 718, 721 (Bankr.W.D.Tenn.2000).

Buckeye has argued that the funds are not property of Meadows' estate because of the § 362(b)(11) stay exception. However, the transfer occasioned by the presentment of the check did not occur until after the petition was filed. *Guinn v. Oakwood Properties, Inc. (In re Oakwood Markets, Inc.)*, 203 F.3d 406, 407–08 (6th Cir.2000); and *Franklin*, 254 B.R. at 721. In *Guinn*, the Sixth Circuit adopted the date of honor as the date of transfer for checks presented on a post-petition basis, following *Barnhill v. Johnson*, 503 U.S. 393, 112 S.Ct. 1386, 118 L.Ed.2d 39 (1992), which adopted that standard for prepetition preference causes of action. While § 362(b)(11) provides an exception to the automatic stay for presentment of checks, it does not provide an exception to the broad definition of property of the estate. Nor does § 541(b) or any other section of the Bankruptcy Code provide an exception to property of the estate for the funds held by Buckeye. Accordingly, the court finds that the funds in Meadows' bank account on the date of the filing of her bankruptcy case, including the funds at issue in this contested matter, are property of the estate.

---

**6.** 11 U.S.C. § 541 states, in relevant part, that "(a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

(1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case."

The exceptions referenced in subsection (b) and (c)(2) are not applicable to this contested matter.

## Buckeye's Retention of the Funds is a Violation of the Automatic Stay

■ Having found that the funds were property of Meadows' bankruptcy estate pursuant to § 541(a), once the check was presented and honored, can Buckeye, absent the Debtor pursuing a § 549 adversary proceeding or other appropriate litigation, retain the funds? Buckeye argues that the stay exception of § 362(b)(11) extends to protect the proceeds derived from the presentment of the check.

■ Section 362(b)(11) does not, by its plain and unambiguous language [7], provide any support which suggests a creditor is authorized to transfer property of the estate.[8] As one bankruptcy court noted, the retention of estate property is a violation of the automatic stay:

> It must also be stressed that 11 U.S.C. § 362(b)(11) permits only the presentment of negotiable instruments but does not authorize the transfer of any property.... As stated above, a Court must read a statute based on its plain language, unless that language is ambiguous. The language and wording of 11 U.S.C. § 362(b)(11) is clear and unambiguous, and states only that a creditor may present a negotiable instrument post-petition and not violate the stay. There is nothing in the statute, however, on the protection of funds transferred or received upon such presentment. This Court cannot, therefore, read such language or intention into the statute. As such, any transfer from a debtor's bank account, whether it be property of the estate or the debtor's own post-petition property, may be avoided. Any actual transfer of money from the estate to [a creditor] can be recovered under 11 U.S.C. § 549, which allows the bankruptcy trustee to recover any transfer after the commencement of the case. *Similarly, any transfer of the debtor's property post-petition, for example, money deposited from a post-petition paycheck, would be a violation of the automatic stay under 11 U.S.C. § 362(a), and would be avoidable.* (emphasis added)

*In re Noffsinger,* 316 B.R. 283, 286–87 (Bankr.W.D.Ky.2004) (emphasis added). Accordingly, the court concludes that § 362(b)(11) did not effect or authorize a transfer of Meadows' funds in her bank account to Buckeye.

■ The Sixth Circuit B.A.P. has held that withholding of possession of property of the bankruptcy estate constitutes the exercise of control over property of the estate and is a violation of the automatic stay. *TranSouth Fin. Corp. v. Sharon (In re Sharon),* 234 B.R. 676, 682 (6th Cir.BAP 1999). Withholding possession of property from a bankruptcy estate is the essence of 'exercising control' over possession. *Id.* at 682. The knowing retention of estate property violates the automatic stay provided by § 362(a)(3). *State of Cal. Employ. Dev't Dep't v. Taxel (In re Del Mission Ltd.),* 98 F.3d 1147, 1151 (9th Cir.

---

7. See *Connecticut Nat'l Bank v. Germain,* 503 U.S. 249, 253–54, 112 S.Ct. 1146, 117 L.Ed.2d 391(1992) ("[W]e have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what is says there....")

8. The apparent purpose of § 362(b)(11) is to insure the efficiency of the United States check processing system, to protect the stream of commerce, and to provide protection to banks processing checks because there is no way that financial institutions can ascertain the bankruptcy status of the numerous people whose checks are processed each day. See *Franklin v. Kwik Cash of Martin (In re Franklin),* 254 B.R. 718, 721 (Bankr. W.D.Tenn.2000).

1996).[9]

■ Actions in violation of the stay in the Sixth Circuit "are invalid and voidable and shall be voided absent limited equitable circumstances." *Easley v. Pettibone Michigan Corp.*, 990 F.2d 905 (6th Cir. 1993). In these circumstances, the act of retaining the funds received from presentment of the check, despite notice of the bankruptcy, is considered void and Buckeye is obligated to return these funds to Meadows, without any condition.

Buckeye argues that limiting the stay exception of § 362(b)(11) in this manner would render § 549 superfluous. However, § 549 simply provides Meadows a possible remedy for the return of the funds. Furthermore, while Meadows' rights to have the funds returned to her estate under § 549 may overlap with the protection offered by § 362, § 549 has a separate role and vitality for Chapter 7 trustees in protecting creditors from unauthorized post-petition voluntary transfers made by a debtor of estate property. *Wittman v. State Farm Ins. Co. (In re Mills)*, 176 B.R. 924, 928 (D.Kan.1994). Such transfers by a debtor are recoverable under § 549 and do not even implicate the automatic stay.

■ Buckeye's offer to return the funds to Meadows contingent upon her signing of a general release and the fact that Meadows may have had a remedy to recover the funds under Code § 549 does not negate the violation of the stay or mitigate it in any manner.[10] The duty to return property of the estate to the debtor or trustee upon discovering the bankruptcy is unconditional. Once a person or entity holding property of the debtor or bankruptcy estate discovers the bankruptcy, the duty is to return that property to the bankruptcy estate. *Sharon*, 234 B.R. at 685; *In re Knaus*, 889 F.2d 773, 775 (8th Cir.1989); *Del Mission*, 98 F.3d at 1151. The onus to return estate property is placed upon the possessor and it is not the responsibility of the debtor to pursue the possessor. *Del Mission*, 98 F.3d at 1151. Thus, the duty to return property of the estate is not contingent on any predicate act of the debtor or trustee, such as a debtor's filing of a proceeding under § 549, the signing of a release, or any other such demand or action on behalf of the bankruptcy estate.[11] To require the debtor to institute proceedings to obtain property of the estate would result in the unnecessary dissipation of estate assets incurred in the cost of the pursuit of such property and unjustifiably shifts the burden of obtaining estate property to the estate. *Knaus*, 889 F.2d at 775; *Del Mission*, 98 F.3d at 1151–52.[12]

9. Although Buckeye counsel argued otherwise, the court finds the principle that a creditor is obligated to return estate property once the case commences applies equally as well to this fact pattern. If anything, the principle enunciated in cases such as *Sharon* holds even more weight here, because Buckeye, unlike the creditor in *Sharon*, does not hold a secured claim in Meadows' case and the issue of adequate protection is of no moment.

10. Buckeye cites *Thomas v. Money Mart Fin. Svcs.*, 311 B.R. 75, 80 (Bankr.W.D.Mo.2004), for the proposition that Meadows was required to file an adversary proceeding under § 549 to avoid the post-petition transfer. To the extent that that decision requires an adversary proceeding by a debtor to recover estate funds knowingly held by a creditor as her sole remedy, for the reasons stated in this *Decision*, the court disagrees and applies the principle of cases such as *Sharon*.

11. 11 U.S.C. § 542(c) provides a defense to a § 542 turnover action for a party without "actual notice or actual knowledge" of the bankruptcy. As this court has determined Buckeye has an independent obligation to return the funds, the nature of this defense, or any other aspect of § 542 is not an issue.

12. If Meadows was required to file an adversary proceeding, the expense in counsel and filing fees would be more than the $460 she

Simply, § 362(b)(11) does not except the post-petition holding of estate funds from the stay. That stay exception protects the process of presentment of checks, no more, no less. However, once Buckeye held estate funds, it had an obligation to return those funds without any attached condition or prerequisite.[13]

**Buckeye's Retention of the Funds is a Willful Violation of the Automatic Stay Entitling Meadows to Recover Her Attorney Fees From the Time the Violation Became Willful**

 Section 362(k)(1), codified as § 362(h) prior to the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), allows for damages for a willful violation of the stay. Meadows had the burden to prove her entitlement to damages under § 362(k). *Sharon*, 234 B.R. at 687. In order to be entitled to dam-

ages under § 362(k), Meadows was required to establish that the violation of the stay was a willful violation of the stay. In *Sharon*, the Court held that a violation of the automatic stay is willful when: a) the creditor had knowledge of the stay; and b) despite that knowledge, violated the stay through an intentional act. *Id.* Further, BAPCPA added § 342(g)(2)[14] providing that a monetary penalty may only be imposed for violating the stay if the conduct occurred after the creditor received actual notice of the bankruptcy.

 In this instance, Meadows is only seeking attorney fees as damages from the time that Buckeye concedes it received actual notice of the bankruptcy case, which was from the time Buckeye received the Texas facsimile (Doc. 54, p.

---

would seek to recover. The automatic stay requires Buckeye to return the funds and not impose any condition or require Meadows to commence litigation. There is nothing in the language of § 362(b)(11) or § 362(a)(3) that suggests any other result.

13. None of the cases cited by Buckeye in its memoranda and in its argument at the hearing contradict the conclusions of the court made in this *Decision. Brewer v. QC Financial Services, Inc.*, 313 B.R. 795, 798 (Bankr. E.D.Wis.2004) recognized the stay exception for the presentment of a check, but also noted that a creditor, who refused to turnover estate property, would be in violation of the automatic stay. *In re Noffsinger*, 316 B.R. 283, 286–87 (Bankr.W.D.Ky.2004) concluded that holding estate funds post-petition are recoverable under § 549, but also that such an action is a stay violation.

*Wittman v. State Farm Ins. Co. (In re Mills)*, 176 B.R. 924 (D.Kan.1994) recognized that § 549 provides a trustee a remedy to recover property protected by § 542(c). This decision was an appeal of a case in which a Chapter 7 trustee sought to avoid a post-petition transfer of estate funds. The court simply found that § 549 allowed the trustee to recover estate

funds, even if the presentment of a check post-petition is not a stay violation. The court never held, in the absence of a § 549 action, a creditor can hold estate funds, with knowledge of the bankruptcy and not be in violation of the stay.

*Thomas v. Money Mart Fin. Svcs., Inc.*, 428 F.3d 735 (8th Cir.2005) only addressed the scope of presentment under Missouri law and did not address the issue of retention of funds as a stay violation. In *Roete v. Smith (In re Roete)*, 936 F.2d 963 (7th Cir.1991), the court only addressed the issue the Debtor has conceded, post-petition presentment of a check is not a stay violation. It does not address the issue before the court. Similarly, *Blasco v. Money Svcs. Center (In re Blasco)*, 352 B.R. 888 (Bankr.N.D.Ala.2006) does not hold that a creditor, with notice of a bankruptcy, can hold estate funds indefinitely.

14. 11 U.S.C. § 342(g)(2) states that "[a] monetary penalty may not be imposed on a creditor for violation of a stay in effect under section 362(a) (including a monetary penalty imposed under section 362(k)) ... unless the conduct that is the basis of such violation or of such failure occurs after such creditor receives notice effective under this section of the order for relief."

40), June 26, 2007.[15] The court finds Buckeye, as of June 26, 2007, has intentionally retained the funds received from presentment of the check which are property of the estate and imposed its own conditions for the return of the funds with notice of the bankruptcy and, therefore, that this conduct constitutes a willful violation of the stay. Buckeye's erroneous interpretation of the scope of § 362(b)(11) does not mitigate Meadows' right to recover all reasonable attorney fees incurred after June 26, 2007 related to this contested matter. *Sharon*, 234 B.R. at 687–88. However, to the extent the Debtor has requested punitive damages, the court declines to award such damages. Punitive damages are only appropriate for a stay violation under circumstances in which a creditor has engaged in "egregious, intentional conduct" in violation of the automatic stay. *In re Cepero*, 226 B.R. 595, 600 (Bankr.S.D.Ohio 1998). Such circumstances do not exist in this case.

### Conclusion

Meadows' motion for violation of the automatic stay is granted. Meadows shall file a motion for all attorney fees related to this contested matter incurred after June 26, 2007 within thirty (30) days after the entry of the order on this *Decision,* which shall be served and noticed upon Buckeye and all other required parties under this court's local rules. In addition, Buckeye shall return the funds in the amount of $460 to Meadows within fifteen (15) days after entry of the order on this *Decision.*

**IT IS SO ORDERED.**

---

**15.** Accordingly, the court need not address the issue of whether the creditor received effective notice prior to that time. Although Debtor counsel referenced the August 15, 2007 letter from Ms. McCoy, the record is undisputed that Buckeye had notice as of June 26, 2007 (Doc. 54, p. 24).