Stacia L. YOON, Trustee, Appellant,

v.

Alesia MINTER–HIGGINS, Appellee.

No. 2:07–CV–151–TS.

United States District Court, N.D. Indiana.

Feb. 8, 2008.

---

Stacia L. Yoon, Genetos Retson Yoon & Molina LLP, Merrillville, IN, trustee pro se.

Kevin B. Relphorde, Gary, IN, for appellee.

## OPINION

THERESA L. SPRINGMANN, District Judge.

The Trustee of a bankruptcy estate, Stacia L. Yoon, sought the turnover of funds that were in Alesia Minter–Higgin's credit union account when Minter–Higgins filed her Chapter 7 bankruptcy petition. However, the funds in the account had since been depleted because the bank honored checks and debit card payment requests that predated the bankruptcy petition. The bankruptcy court denied the Trustee's motion for turnover of the funds that had been transferred from the account, finding that the transfers were authorized under the bankruptcy code. The Trustee appeals the bankruptcy court's order pursuant to 28 U.S.C. § 158, arguing that the court's legal conclusions were erroneous.

## BACKGROUND

On July 5, 2005, Alesia Minter–Higgins (the Debtor) filed a Chapter 7 bankruptcy petition. The filing of this petition created a bankruptcy estate, comprised of all of the Debtor's legal or equitable interests in property as of the start of the case. The bankruptcy estate included the property of the Debtor, wherever it was located, and by whomever it was held. 11 U.S.C. § 541(a). Yoon, as the Chapter 7 Trustee, was required to collect and reduce to money the property of the bankruptcy estate. 11 U.S.C. § 704(a)(1).

The debtor in a Chapter 7 bankruptcy case has several obligations, which are listed in § 521. One requirement is that the debtor surrender all property of the bankruptcy estate to the Chapter 7 Trustee. Id. § 521(a)(4). Another section of the code provides, with exceptions not relevant to the instant case, that an "entity" in possession, custody, or control of property that the trustee may use, sell, or lease, or that the debtor may exempt, shall deliver to the trustee, and account for, such property or the value of such property. 11 U.S.C. § 542(a) (describing duty to turn over property to the estate). This section also acts to require the debtor to turn over estate property. See id. § 101(15) (defining "entity" to include a "person"); id. § 101(41) (defining "person" to include "individual").

Acting pursuant to § 542(a), the Trustee sought the turnover of funds that the Debtor held in an account with Advance Federal Credit Union (AFCU) as of the date of the Chapter 7 petition, July 5, 2005. On this date, the account had a balance of $383.13. For reasons discussed later, this motion was unsuccessful.

The filing of the bankruptcy petition automatically imposed a stay as to certain actions. 11 U.S.C. § 362 (automatic stay

provision). Section 362(a)(3) operates as a stay of "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." However, the section of the statute imposing the automatic stay lists several exceptions to the stay. Relevant to this case, § 362(b)(11) provides that the filing of a bankruptcy case does not operate as a stay of "the presentment of a negotiable instrument and the giving of notice of and protesting dishonor of such an instrument." 11 U.S.C. § 362(b)(11).

That exception became relevant in this case when several checks that the Debtor wrote before she filed for bankruptcy were still outstanding when she filed her petition. These items, along with several pre-arranged automatic debits to creditors, were not presented to, and finally charged to, her AFCU account until later. Because this post-petition activity depleted her credit union account, the Debtor objected to the Trustee's motion to turnover the $383.13 AFCU account balance that existed on the date she filed for bankruptcy. She requested that her account be diminished by the items, totaling $415.40, that were presented for payment post-petition. The bankruptcy court agreed with the Debtor and issued oral findings of fact and conclusions of law.

The bankruptcy court reaffirmed its holding in a written opinion on March 23, 2007, see In re Minter–Higgins, 366 B.R. 880 (Bankr.N.D.Ind.2007), after the Trustee moved the court to alter or amend its judgment pursuant to Federal Rule of Bankruptcy 9023 and Federal Rule of Civil Procedure 59. The bankruptcy court held that the balance in the AFCU account on the petition date was an asset of the bankruptcy estate. However, the court concluded that, because post-petition payments of outstanding pre-petition checks

were authorized transfers pursuant to § 362(b)(11), they represented a permissible diminution of the bankruptcy estate. The bankruptcy court held that the Trustee could not recover the value of those transfers from the Debtor, or from the transferees through separate adversarial proceedings.

On April 3, 2007, the Trustee filed her notice of appeal, which was entered on this Court's docket on May 7, 2007. On June 25, 2007, the Trustee filed the Appellant's Brief. The Appellee has not filed a brief or otherwise responded to the Appellant's arguments.

## DISCUSSION

A district court sits as an appellate court in this matter. Fed. R. Bankr.P. 8013; In re Smith, 286 F.3d 461, 464–65 (7th Cir.2002). The issue before this Court is whether the bankruptcy court was correct to conclude that 11 U.S.C. § 362(b)(11) authorizes the post-petition transfer of estate property and that, accordingly, a Chapter 7 debtor should not be required to replace money that cleared her checking account post-petition. The Trustee argues that this holding is contrary to law and should be reversed. This Court applies a de novo standard of review to the bankruptcy court's conclusions of law. Smith, 286 F.3d at 465.

Neither party disputes that the $383.13 balance that was in the Debtor's AFCU account on July 5, 2005, became property of the bankruptcy estate. See 11 U.S.C. § 541(a)(1) (describing estate as "all legal or equitable interests of the debtor in property as of the commencement of the case"); Barnhill v. Johnson, 503 U.S. 393, 112 S.Ct. 1386, 118 L.Ed.2d 39 (1992) (holding that a "transfer" of property is only made with respect to a negotiable instrument when it is finally honored by the drawee financial institution). The

bankruptcy court held as much. But this is where the Trustee's agreement with the bankruptcy court ends. The Trustee challenges the court's remaining conclusions that (1) post-petition transfers of this property are authorized when they concern the presentation of a negotiable instrument and (2) that the Trustee cannot avoid the transfers or recover their value. The Trustee argues while § 362(b)(11) is an exception to the automatic stay, it does not authorize the transfer of property. The Trustee maintains that when post-petition transfers of property occur because a transferee cashes a check that was written pre-petition, it is the debtor who bears the burden of reimbursing the estate for the value of the transfers to the payees. The Trustee submits that the debtor maintains control of the funds in the bank account and is obligated to turn them over to the trustee for administration as an asset of the estate.

## A. Section 362(b)(11)

As the bankruptcy court acknowledged, "[t]he key to the issues presented in this contested matter is 11 U.S.C. § 362(b)(11), which excepts the presentment of a negotiable instrument for payment from the operation of the automatic stay." (Bankr. Order at 8.) The court began its discussion of § 362(b)(11) by stating, first, the purpose of the automatic stay and, second, the purpose of the exception to the stay set forth in § 362(b)(11). This Court agrees with those stated purposes. (*See* Bankr. Order at 9) (quoting *Aiello v. Providian Fin. Corp.*, 239 F.3d 876, 879 (7th Cir. 2001) (describing stay as primarily for the protection of unsecured creditors and also for the debtor's protection), and *Roete v. Smith*, 936 F.2d 963, 966 (7th Cir.1991) (stating Congress' intent that the automatic stay was not to interfere with the rights of a holder of a negotiable instrument to deposit a check for the purpose of preserving rights on the instrument)).

■ Indeed, the purpose of the exception for negotiable instruments has been well noted. It is to "protect financial institutions without notice of bankruptcy and to facilitate commerce." *In re Superior Toy & Mfg. Co.*, 183 B.R. 826, 837 (Bankr. N.D.Ill.1995) (citing *In re Mills*, 167 B.R. 663, 664 (Bankr.D.Kan.) *aff'd* 176 B.R. 924 (D.Kan.1994)).

> The apparent purpose of § 362(b)(11) is to insure the efficiency of the United States check processing system, to protect the stream of commerce, and to provide protection to banks processing checks because there is no way that financial institutions can ascertain the bankruptcy status of the numerous people whose checks are processed each day. *See Franklin v. Kwik Cash of Martin (In re Franklin)*, 254 B.R. 718, 721 (Bankr.W.D.Tenn.2000).

*In re Meadows*, 379 B.R. 737, 743 n. 8 (Bankr.S.D.Ohio 2008).

> Under the Uniform Commercial Code, presentment of an instrument is often a prerequisite to asserting remedies against secondary obligors, such as indorsers of the instrument. This exception to the stay permits the presentment of the instrument, which may enable the holder to enforce the instrument against secondary obligors. Significantly, the provision does not authorize enforcement against the debtor. Instead, the exception is limited to presentment of the instrument. Mere presentment does not affect the estate's assets and, at best, fixes the debtor's liability.

3–362 *Collier on Bankruptcy*, P 362.05 (15th ed. rev.) (discussing purpose of § 362(b)(11)).

■ This Court cannot, however, agree with the bankruptcy court's conclu-

sion that § 362(b)(11)'s exception for the presentment of negotiable instruments and its recognized purpose means that "the *diminishment* of a debtor's bankruptcy estate due to the presentment of negotiable instruments/debit transfers requests subsequent to the filing of the petition has been specifically accepted by Congress." (Bankr. Order at 10) (emphasis added). Section 362(b)(11) does not mention transfer, payment, or diminishment.

[A] Court must read a statute based on its plain language, unless that language is ambiguous. The language and wording of 11 U.S.C. § 362(b)(11) is clear and unambiguous, and states only that a creditor may present a negotiable instrument post-petition and not violate the stay. *There is nothing in the statute, however, on the protection of funds transferred or received upon such presentment.* This Court cannot, therefore, read such language or intention into the statute. As such, any transfer from a debtor's bank account, whether it be property of the estate or the debtor's own post-petition property, may be avoided.

*In re Noffsinger*, 316 B.R. 283, 286–87 (Bankr.W.D.Ky.2004) (emphasis added), *cited in In re Meadows*, 379 B.R. at 743. Section 362(b)(11) "protects the process of presentment of checks, no more, no less." *In re Meadows*, 379 B.R. at 745. "Presentment" is satisfied by the "mere demand for payment" of a negotiable instrument. *See*

*In re Roete*, 936 F.2d 963, 966 (7th Cir. 1991) (discussing the meaning of presentment of a negotiable instrument found in § 362(b)(11) using the Uniform Commercial Code as codified in Indiana).[1]

Therefore, pursuant to § 362(b)(11), the demand for payment of a check does not violate the automatic stay. However, this does not mean that the bank's payment of funds to the payee is immune from being avoided or otherwise recovered by the Trustee. *See In re Mills*, 176 B.R. at 927–28 (reasoning that the code sections regarding stays and those regarding avoidance of transfers have different purposes and functions). Relying on the distinction between the code sections and on the limited applicability of § 362(b)(11), various courts have held that § 362(b)(11) does not authorize any transfer of estate property, but merely permits the presenter's performance of an act that would otherwise be a stay violation. *See In re Noffsinger*, 316 B.R. 283, 286 (Bankr.W.D.Ky.2004) ("It must also be stressed that 11 U.S.C. § 362(b)(11) permits only the presentment of negotiable instruments but does not authorize the transfer of any property."); *In re Thomas*, 311 B.R. 75, 79–80 (Bankr. W.D.Mo.2004) (distinguishing between right to present check without violation of automatic stay and right to avoid the transfer of funds resulting from honoring the check); *In re Franklin*, 254 B.R. 718, 721 (Bankr.W.D.Tenn.2000) (stating that

---

**1.** The Indiana code section discussed in *Roete* has since been amended and renumbered. However, the definition of "presentment" still covers the mere demand for payment of a negotiable instrument.

    (a) "Presentment" means a demand made by or on behalf of a person entitled to enforce an instrument:

    (1) to pay the instrument made to the drawee or a party obliged to pay the instrument or, in the case of a note or accepted draft payable at a bank, to the bank; or

    (2) to accept a draft made to the drawee.
Ind.Code § 26–1–3.1–501(a)(1)–(2) (formerly Ind.Code § 26–1–3–504) (providing definition of "presentment" identical to that found in Article 3, § 501 of the Uniform Commercial Code.) "Payment" and "tender of payment" are defined in separate sections of the Indiana code. *See* Ind.Code § 26–1–3.1–602 (payment); Ind.Code § 26–1–3.1–603 (tender of payment).

the presentment of checks post-petition is not a violation of the automatic stay, but that payment of these checks are an unauthorized transfer of property from the estate to the payee); *In re Superior Toy & Mfg. Co.,* 183 B.R. 826, 837 (Bankr.N.D.Ill. 1995) (stating that Congress did not intend to create a safe harbor for checks written pre-petition and presented post-petition) (citing *in re Mills,* 176 B.R. 924, 927 (D.Kan.1994)).

This Court can find no case holding that § 362(b)(11) authorizes the transfer of estate property. In fact, the cases have come to the exact opposite conclusion, as noted above. This Court finds that the plain language of § 362(b)(11) and the case law interpreting that provision mandate the conclusion that § 362(b)(11) does not authorize transfers of estate property for the payment of negotiable instruments presented post-petition. It was error for the bankruptcy court to hold contrary.

**B.  Trustee's Avoidance of Transfer**

■ The above-cited cases involved actions by the trustees to avoid the transfer of estate property under § 549. Under this provision, a trustee may avoid the transfer of estate property if it occurred (1) after the start of the case and (2) it was either not authorized, or only authorized under § 303(f) or 542(c). 11 U.S.C. § 549(a)(2)(A)-(B).[2] The transfers in those cases were avoidable because they were only authorized pursuant to § 542(c), which provides:

> an entity that has neither actual notice nor actual knowledge of the commencement of the case concerning the debtor may transfer property of the estate, or pay a debt owing to the debtor, in good faith and other than in the manner specified in subsection (d) of this section, to an entity other than the trustee, with the same effect as to the entity making such transfer or payment as if the case under this title concerning the debtor had not been commenced.

11 U.S.C. § 542(c). This section applies to the checks that AFCU honored post-petition. Thus, AFCU, as the transferor, would be immune from the Trustee's attempt to recover the monies that it paid to honor the checks issued by the Debtor before she filed for bankruptcy. However, § 549(a)(2)(A) specifically allows the Trustee to avoid these transfers.[3]

Affected by its conclusion regarding § 362(b)(11), the bankruptcy court stated that the transfer of the money from a bank account post-petition to honor pre-petition checks is not avoidable under § 549(a)(2)(B). The court reasoned that because § 362(b)(11) provides that the presentment of a negotiable instrument does not violate the automatic stay, the transfer was "an authorized transfer of property from the debtor's account at that financial institution under 11 U.S.C. § 549(a)(2)(B)" (order at 3 n. 3), rather than one authorized only under § 542(c), and therefore avoidable under 11 U.S.C. § 549(a)(2)(A).

In fact, the only discussion of § 542(c) in the bankruptcy court's order is in a footnote to clarify why the Trustee did not

---

**2.** The statute provides that, with certain exceptions,

> the trustee may avoid a transfer of property of the estate—
> (1) that occurs after the commencement of the case; and
> (2)(A) that is authorized only under section 303(f) or 542(c) of this title; or

> (B) that is not authorized under this title or by the court.
11 U.S.C. § 549(a).

**3.** An action to avoid a transfer is a separate adversary proceeding against the transferee. *See* Fed. R. Bankr.P. 7001(1).

(and would not have been able to by law) seek turnover from AFCU instead of from the Debtor. (Bankr. Order at 3 n. 3) (stating that § 542(c) insulated AFCU from any attempt by the Trustee to obtain the July 5, 2005, balance because there was no evidence that it had actual notice or knowledge of the commencement of the Debtor's case). This much is true. But, oddly, the court's discussion of § 542(c) did not translate into a discussion regarding avoidance under 11 U.S.C. § 549(a)(2)(A), despite the fact that § 542(c) is specifically cross-referenced in that subsection, and the fact that the disjunctive "or" is used between the two subsections of § 549(a). Instead, the court overlooks this prong of the avoidance provision and focuses solely on subsection (a)(2)(B), stating that it "precludes recovery of post-petition transactions if they are authorized by either Title 11 of the Unites State Code or by the Court." Because the court found that the transfer of funds from the AFCU account was authorized by 11 U.S.C. § 362(b)(11), it concluded that the "Trustee could not have recovered the $383.13 of transfers from the transferees as a matter of law." (*Id.*)

In light of its finding that such transfers were not avoidable, the court then asked the question, "Why would it be that transferees under the circumstances of this case are completely insulated from any recovery to enhance property of the estate, while the transferor debtor must double pay in order to maintain the value of property diminished by unavoidable transfers?" (Bankr. Order at 10.) The court's answer was that "no sound logical construction of applicable law could obtain that result." (*Id.*)

The bankruptcy court went on to state that it could not agree with cases that "have sided with the Trustee's position" regarding recovery of transferred funds because they have not "analyzed the issues with respect to the pronouncements of 11 U.S.C. § 362(b)(11)." (Order at 10) (citing *In re Sawyer*, 324 B.R. 115 (Bankr.Ariz. 2005) and *In re Dybalski*, 316 B.R. 312 (Bankr.S.D.Ind.2004)). In fact, the court in *In re Sawyer* did specifically mention § 362(b)(11):

> In analyzing § 362(b)(11), which states that the automatic stay does not apply to the presentment of a negotiable instrument, such as a check, and the giving of notice of dishonor of such instrument, and 11 U.S.C. § 542(c), which provides that an entity, such as a financial institution, which has neither actual notice nor knowledge of the commencement of a debtor's case, may transfer property of the estate or pay a "debt owing to the debtor, in good faith" to a person or entity other than the trustee as if the debtor's case had never been filed, the Court discerns a Congressional policy that certain routine transactions in commerce, whether pertaining to an individual debtor or a large corporate entity as a debtor, will not be disrupted, particularly if the entity engaged in the potential transfer of bankruptcy estate property has no actual notice or knowledge of the debtor's having commenced a bankruptcy proceeding. This protection, however, appears to apply only to those third parties which engage in transactions with the debtor.

*In re Sawyer*, 324 B.R. 115, 121 (Bankr. D.Ariz.2005). The court went on to hold that the money in the debtor's bank account on the date the petition was filed became the property of the estate, and that is was recoverable from the debtor despite that fact that checks cleared the bank post-petition because the debtor maintained control over funds for which final payment had not been authorized by the bank. *Id.* at 121–24.

In any event, the Court does not believe that an analysis of § 362(b)(11) is necessary, or even relevant in all circumstances, to a discussion about avoidance or turnover. For a court to hold that avoidance is appropriate for post-petition transfers and not specifically mention § 362(b)(11) is simply consistent with the fact that the provisions are distinct and have distinct purposes. It is not necessary to discuss § 362(b)(11) in the context of avoidable transfers because § 362(b)(11) does not govern transfers, much less authorize them. The following excerpt is an example of an analysis that does not include § 362(b)(11), yet fully describes the trustee's avoidance rights as it concerns negotiable instruments honored post-petition.

"Property of the estate" is broadly defined in § 541 to include all legal or equitable interests of the debtor in property as of the commencement of the case, wherever located and by whomever held. The focus of chapter 7 trustees lies with collecting and liquidating the debtor's property interests held as of the petition date. Funds on deposit in a debtor's checking account on the petition date that are not otherwise exempt are property of the bankruptcy estate. *See, In re Dybalski*, 316 B.R. 312 (Bankr. S.D.Ind.2004). This is true even if checks had been written against the funds pre petition but didn't clear until after the commencement of the case. Since the funds remain under the debtor's control until the checks clear, the "transfer" that occurs upon clearance of the check is a post petition transfer, subject to avoidance by the trustee. The trustee under such circumstances can also proceed directly against the debtors under § 542, and the funds that were on deposit as of the petition date but no longer in the possession of the debtors as of the date of the trustee's turnover motion are nonetheless proper-

ty of the estate. The trustee is entitled to recover the value of such funds under § 542. *Id.* at 315–16.

*In re Parsons*, No. 05–00321 AJM 7A, 2006 WL 3354513 at *1 (Bankr.S.D.Ind. 2006), 57 Collier Bankr.Cas.2d 273.

To recap, presentment of the checks to AFCU did not violate the automatic stay because § 362(b)(11) excepts presentment of negotiable instrument from the stay. However, § 362(b)(11) did not authorize the transfer of estate property. Rather, AFCU's honoring of the checks was authorized by § 542(c)—as long as it did not have actual knowledge or notice of the Debtor's bankruptcy petition. But the transferred funds would not be immune from an action to avoid the transfers under § 549(a)(2)(A). But here, the Trustee has not proceeded under § 549; the Trustee has sought turnover directly from the Debtor. Thus, the question remains as to whether the Debtor is responsible to replenish the transferred amounts to the estate.

## C. Replenishing the Estate

█ Despite all that has been decided, it remains unresolved whether the Trustee can obtain the transferred funds through a motion for turnover against the Debtor, or whether it must seek post-petition payments from the transferees/payees. The answer is not clear cut; the courts that have considered the matter have arrived at opposite conclusions. Some hold that the Trustee bears the burden to seek avoidance while others put the onus on the debtor to turnover the funds, even if they have been transferred from the estate to payees. *Compare In re Taylor*, 332 B.R. 609, 613 (Bankr.W.D.Mo.2005), *In re Pyatt*, 348 B.R. 783 (8th Cir. BAP 2006), *and In re Figueira*, 163 B.R. 192, 194 (Bankr.D.Kan.1993) *with In re Spencer*, 362 B.R. 489 (Bankr.D.Kan.2006), *In re*

*Sawyer,* 324 B.R. 115 (Bankr.D.Ariz.2005), *In re Dybalski,* 316 B.R. 312 (Bankr. S.D.Ind.2004), *and In re Maurer,* 140 B.R. 744 (D.Minn.1992).

Although the bankruptcy court already noted its disagreement with both outcomes, its determination of this issue was tainted by its holding that such transfers are authorized pursuant to § 362(b)(11), and, therefore, a proper diminution of the estate. This Court's holding leaves no doubt that the Trustee could have sought avoidance of the transfers under § 549. But the Trustee did not choose this route, opting instead to proceed directly against the Debtor under § 542(a). As mentioned, a number of courts support this position, but not without fair disagreement from other courts. The reasoning relied on by these courts to arrive at their differing outcomes, which pertains largely to a debtor's duties with respect to bank accounts, is well documented, *see In re Spencer,* 362 B.R. at 492–93, *In re Pyatt,* 348 B.R. at 785–86, and will not be repeated here. The analysis of one court that has rejected the position that a debtor's obligation is limited to providing information about his bank accounts—and not to deliver funds—is set forth below:

> This Court believes that the courts ordering turnover have the better view. Trustees facing this situation have several non-exclusive choices. They can give and rely upon the Fed. R. Bankr.P. 2015(a)(4) notification to the banks if they have sufficient information to do so. They can seek to recover the transferred funds from the payees of the checks by pursuing an avoidance action under § 549. Or, they can seek recovery of the funds from the debtor without an adversary proceeding by invoking either the debtor's duty to surrender under § 521(4) or his duty to turnover under § 542(a). It is ultimately the trustee's duty to collect the property of

the estate "as expeditiously as is compatible with the best interests of the parties in interest." [footnote citing to 11 U.S.C. § 704(1)].

In the present case (as in many, the Court suspects), the debtors did not identify which bank branches held their accounts or the applicable account numbers, making it difficult for the trustee to give the Rule 2015 notification. In addition, had the trustee made the notification, both banks would likely have frozen the accounts, exposing the debtors to the criminal and civil penalties that attend returned checks and thwarting their fresh start by rendering the debtors unable to use their accounts at all. Moreover, most of the checks written and honored post-petition were for a few hundred dollars each. Had the trustee chosen the § 549 route, he would be burdened with commencing a plethora of § 549 actions to recover two or three hundred dollars. This would be a poor economy to the estate, not to mention wasteful of the Court's time and resources. One could hardly consider it "expeditious" as § 704 requires.

While it is undoubtedly burdensome for the debtors to pay twice because the date of filing their petition intervenes between their issuance of checks and those checks being honored, it is well within the law and the trustee's sound discretion to decide to recover these payments from the debtors instead of the payees. The payments were made for the debtors' benefit with money that the debtors had an affirmative duty to deliver to the trustee under § 521(4) and § 542. Were this Court to follow *[In re] Taylor[,* 332 B.R. 609 (Bankr.W.D.Mo. 609)] and *Figueira,* it would be simple for debtors and aggressive creditors to game the system by writing checks immediately pre-petition to pay selected

creditors while remaining secure in the knowledge that trustees would be unlikely to pursue very small § 549 actions. This in turn would result in an unfair distribution to those creditors the debtors chose not to pay pre-filing and defeat the Code's policy of promoting a fair distribution of the debtor's assets. Collected funds in a debtor's bank account at the date of filing are property of the estate and, prior to outstanding checks being honored, debtors retain possession, custody, or control of these assets. They are accordingly subject to turnover at the trustee's request. Debtors seeking to avoid the unpleasant result of multiple payments should be certain that any checks they write prepetition have cleared before they file their case.

*In re Spencer,* 362 B.R. at 493–94.

Relying on this reasoning, the Court finds that the Trustee is entitled to recover from the Debtor the value of the funds that were in her account on the date she filed the Chapter 7 petition for bankruptcy. *See* 11 U.S.C. § 542(a); *see also In re Dybalski,* 316 B.R. at 315–17 (granting trustee's motion to compel debtors to turnover funds in their checking account on date petition was filed without a reduction for prepetition checks that cleared the account postpetition).

## CONCLUSION

The Court REVERSES the bankruptcy court's order and REMANDS the matter for the entry of an order consistent with this opinion.