**In re Daniel Adam ZARCO, Sr., Debtor.**

**No. 13 B 25463.**

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

Signed March 25, 2014.

Richard G. Fonfrias, Fonfrias Law Group, LLC, Chicago, IL, for Debtor.

## Order Sanctioning Attorney Richard G. Fonfrias

JACQUELINE P. COX, Bankruptcy Judge.

### I. Facts and Background

On June 20, 2013 ("Petition Date"), Debtor, Daniel Adam Zarco, Sr. ("Debtor"), sought bankruptcy relief under Chapter 7 of the Bankruptcy Code. Debtor's attorney Richard G. Fonfrias has filed three motions for damages herein. On July 1, 2013, he filed a *Motion for Damages* ("Motion or First Motion"). Docket No. 13.

The Debtor's bank account at J.P. Morgan Chase ("Chase") was frozen prepetition after an entity known as Rapid Advance obtained a judgment against him and his business, Toro Builders Corporation. The Debtor complained in the Motion that Rapid Advance's attorney Patrick Siegfried violated the automatic stay by not releasing Rapid Advance's prepetition levy on the frozen bank account once bankruptcy protection was sought. The *Notice of Motion,* as well as a July 8, 2013 *Amended Notice of Motion* at docket number 15, indicates that Attorney Patrick Siegfried was served at a Bethesda, Mary-

land address and via fax and that Rapid Advance was served at a Bethesda, Maryland address and via fax. There is no indication that the First Motion was served on Chase. The Debtor asked that notice of his Motion be shortened "due to the urgency of needing his bank a[sic] account unfrozen." Docket No. 13, ¶ 19. The proposed order filed with the Motion asked that the court grant the following relief: compel Attorney Patrick Siegfried to release the levy on Debtor's personal checking account at Chase; that Attorney Patrick Siegfried be ordered to pay $6000 to Debtor for damages and for such other and further relief as the Court deemed fair and just. *See* Proposed Order, Docket No. 13.

On July 10, 2013, Mr. Fonfrias filed a second *Motion for Damages* ("Second Motion") which sought an order compelling Chase to release the levy and an assessment of actual and punitive damages against Chase. Docket No. 16.

The *Notice of Motion* filed with the July 10, 2013 Second Motion indicates that two entities were served: Attorney Patrick Siegfried, via fax and Chase at two addresses and at a fax number. *See* Docket Number 16. No officer or employee of Chase was identified as having received notice of the Second Motion. During a hearing on July 16, 2013, this Court raised concerns that no person at Chase had been served and suggested that Chase's Chief Executive Officer Jamie Dimon could be served. July 16, 2013 Transcript, p. 4. The Court suggested that an actual person at Chase be served. *Id.* at 6. The matter was continued to July 23, 2013. Review of the court docket on July 23, 2013 revealed that nothing had been filed indicating that a person at Chase had been served. Neither Mr. Fonfrias nor the Debtor appeared in court on July 23, 2013. *See* July 23, 2013 Transcript, p. 2.

The matter was continued to July 25, 2013. On July 25, 2013, Attorney Fonfrias directed the Court's attention to an *Amended Notice of Motion,* Docket No. 23, filed on July 25. However, that document was also suspect. It indicated that Amanda McCloud had been served at Court Orders & Levies at Chase, without indicating whether she was an agent or officer at Chase. In addition, it stated that it had been mailed on July 10, 2013, prior to this Court's July 16, 2013 suggestion that the Motion be renoticed. The Court suggested that Mr. Fonfrias renotice the matter for August 1, 2013 and file a proof of service. *See* July 25, 2013 Transcript, p. 3.

On July 25, 2013, an additional *Amended Notice of Motion* was filed at Docket No. 25. The docketed copy of that pleading does not include a statement indicating when or if it was served. In addition, it fails to indicate whether Amanda McCloud was an agent or officer of Chase.

On August 1, 2013, the Court again suggested serving Mr. Dimon. The Court asked Attorney Toni Dillon, who often represents Chase, to find out if Chase had notice of the Motion. The matter was reset to August 20, 2013.

On August 20, 2013, Ms. Dillon had no information regarding this matter. Mr. Fonfrias did not appear in court on August 20, 2013; the Motion was stricken. *See* Order at Docket No. 28 striking the Second *Motion for Damages.*

On August 22, 2013, Mr. Fonfrias filed a Third *Motion for Damages* ("Third Motion"), complaining of the same situation; it was set for hearing on September 12, 2013. *See* Docket No. 29. The Third Motion included much of what the First and Second Motions alleged. It sought an order compelling Chase to release the levy on the Debtor's personal banking account

and an assessment of actual and punitive damages against Chase. The First Motion had not been resolved.

On September 12, 2013, Attorney Kevin Driscoll appeared on behalf of Chase. He pointed out that while Mr. Fonfrias was trying to access $10,000 from the Chase account in issue, the Debtor's schedules indicated that there was no money in the account and that the Debtor did not claim an exemption in the funds in the account. Review of the Debtor's initial petition for relief, at Schedule C, Property Claimed As Exempt, reveals that the Debtor did not exempt the funds in the account. The Debtor's Schedule B of Personal Property indicated that the account had no funds in it. *See* Docket No. 1, pp. 9–12. The Debtor filed Amended Schedules B and C on September 20, 2013, disclosing $8,647.10 in the account and claiming an exemption in those funds. *See* Docket No. 37. Attorney Driscoll also reported that the account had $10,000 in it on the Petition Date. He also reported that the funds in the account were held pursuant to a garnishment proceeding and that because this is a chapter 7 case, the funds belong to the chapter 7 trustee. The Third *Motion for Sanctions* was denied on September 12, 2013. Order at Docket No. 31.

## II. Discussion

■ Federal Rule of Bankruptcy Procedure 9014 requires that when relief is requested by motion that the party against whom relief is being sought be given reasonable notice and an opportunity for hearing. Subdivision (b) of F.R.B.P. 9014 provides that motions shall be served in the manner provided for service of a summons and complaint by F.R.B.P. 7004. F.R.B.P. 7004(b)(3) provides that a domestic or foreign corporation may be served by mailing a summons and complaint to the attention of an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process. Mr. Fonfrias should have served the first two motions on Chase through one of its officers or agents.

Local Bankruptcy Rule 9013–1(A)(3) requires that motions be properly served on all parties in interest. Since each motion sought relief regarding Chase, Chase should have been served as an interested party. Local Bankruptcy Rule 9013–1(C)(3) provides that every motion must be filed with the clerk of court and that the filing must include a Certificate of Service which must state for each recipient who is a registrant with the court's CM/ECF system, the date of the filing and the name of the recipient, and for each recipient who is not a registrant with the court's CM/ECF system, the date, manner of service, and name and address of the recipient. No Certificates of Service were filed with any of the *Motions for Sanctions*.

Mr. Fonfrias sought relief against Chase in the Second Motion without noticing an officer or employee of that entity according to the *Amended Notice of Motion*, even though this Court suggested that a person at Chase be named, and suggested that notice to Chase's Chief Executive Officer Jamie Dimon would be sufficient. Mr. Fonfrias noticed Mr. Dimon on the Third *Motion for Sanctions* filed on August 22, 2013.

### a. Property of the Bankruptcy Estate

Upon filing a bankruptcy case, the debtor's property becomes property of the bankruptcy estate; the chapter 7 trustee becomes responsible for collecting and reducing the property of the bankruptcy estate to money. 11 U.S.C. §§ 541(a) and 704(a)(1).

■ Attorney Fonfrias' failure to notify Chase through an officer or an agent authorized by appointment or by law on the First and Second Motions is troubling. The issue is whether he tried to exert unauthorized control over bankruptcy estate assets by not properly noticing Chase. Chase had a duty to turn over the funds to the chapter 7 trustee, not to the Debtor. 11 U.S.C. § 542(a). Had Chase turned over the account's funds to anyone other than the trustee, it would be liable to the bankruptcy estate for turning over the funds to the wrong entity.[1]

### b. Sanctions

■ Federal Rule of Bankruptcy Procedure ("F.R.B.P.") 9011(c)(1)(B) allows a court on its own initiative to enter an order describing conduct that appears to violate subdivision (b) and direct an attorney to show cause why he or she has not violated that provision.

On January 8, 2014, this Court issued an order allowing Mr. Fonfrias to explain at a hearing set for February 5, 2014 why he should not be sanctioned pursuant to F.R.B.P. 9011(c)(1)(B) for violating his duty as an attorney under subdivision (b) of that Rule to not present to the court motions and pleadings for improper purposes. "Bankruptcy Rule 9011(b) is essentially the equivalent of Federal Rule of Civil Procedure 11." *In re Liou,* 503 B.R. 56, 60 n. 7 (Bankr.N.D.Ill.2013). Subdivision (b) provides:

> By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,
>
> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law
>
> . . . .

FED. R. BANKR. P. 9011(b)(1) and (2).

Trustee David Herzog testified at the February 5, 2014 hearing that he receives notifications electronically through the court's electronic filing system and that he viewed Mr. Fonfrias' motions as efforts seeking sanctions, not for turnover. He also stated that he did not view Mr. Fonfrias' conduct as an effort to deceive him and to obtain property belonging to the bankruptcy estate. The trustee's position is understandable. According to Debtor's Schedule B there were no funds in the account and Debtor's Schedule C, Property Claimed as Exempt, did not claim any assets as exempt. The trustee was correct to conclude that there were no bankruptcy estate assets to be turned over.

Mr. Fonfrias had previously stated that he did not believe that the funds were property of the bankruptcy estate and admitted that he had not served the chapter 7 trustee with notice of the Third Motion.

---

1. Section 542(a) states "Except as provided in subsection (c) or (d) of this section, an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate." 11 U.S.C. § 542(a).

*See* September 12, 2013 Transcript, at pp. 8–9.

On February 5, 2014, Mr. Fonfrias explained that he filed the First Motion to obtain a finding that Chase violated the automatic stay by not unfreezing the Debtor's account. That is not true. The First *Motion for Damages* did not seek a finding that Chase had violated the automatic stay; it asked the court to compel the release of the levy on the account.

Mr. Fonfrias also stated that he did not know that there were funds in the account. *See* February 5, 2014 Transcript, pp. 3–9. The Court does not believe that he asked to have Chase unfreeze an account that held no funds. A statement he made earlier in this matter belies that assertion. At the July 16, 2013 hearing Mr. Fonfrias stated that his "client was trying to run a business so checks started bouncing." *See* July 16, 2013 Transcript, p. 3. This strongly suggests that Mr. Fonfrias wanted to unfreeze the account so that his client's checks could be paid from the funds in the account. Mr. Fonfrias thought that there were funds in the account. The *Motions for Damages* were part of an effort by Mr. Fonfrias and the Debtor to exert unauthorized control over the account. Upon Debtor's bankruptcy filing, the funds in the account became property of the bankruptcy estate. The funds were no longer available to cover the Debtor's outstanding checks. *Yoon v. Minter–Higgins*, 399 B.R. 34, 39 (N.D.Ind.2008) (explaining that where a bank paid checks issued prepetition after the petition date, a trustee was entitled to recover from the debtor the value of the funds that were in her account on the petition date).

Mr. Fonfrias has violated F.R.B.P. 9011(b) by claiming that he did not know that there were funds in the account and that the funds there were not property of the bankruptcy estate. The Court finds that Mr. Fonfrias presented the *Motions for Damages* for an improper purpose, to exert control over funds that his client had no right to.

The Court sanctions Mr. Fonfrias in the amount of $1,000 payable to the Clerk of the Bankruptcy Court.

If Chase submits a request for attorneys' fees expended to respond to the pleadings filed by Mr. Fonfrias, the Court will consider requiring Mr. Fonfrias to reimburse Chase for those costs, as allowed by F.R.B.P. 9011(c)(2).

The Debtor's First *Motion for Damages* at Docket No. 16 is DENIED.

This matter is set for a Status Hearing on Wednesday, April 22, 2014 at 10:30 a.m.